396 A.2d 377

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Carl G. BROWN, Appellant.**

Superior Court of Pennsylvania.

Submitted Sept. 12, 1977.

Decided Dec. 22, 1978.

John A. Felix, Williamsport, for appellant.

David C. Shipman, Assistant District Attorney, Williamsport, for Com., appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

JACOBS, President Judge:

Appellant Carl Brown brings this appeal from a dismissal of his P.C.H.A. petition.[1] He contends that he was not in "official detention" at the time he walked away from a work release program, and was erroneously charged with escape under 18 C.P.S.A. § 5121(a). That section reads:

> (a) Escape.—A person commits an offense if he unlawfully removes himself from official detention or fails to return to official detention following temporary leave granted for a specific purpose or limited period.

In the alternative, he argues that the charge of escape should have been classified as a misdemeanor of the second degree, rather than as a felony of the third degree. The relevant grading guidelines are set forth in 18 C.P.S.A. § 5121(d):

> (d) Grading.—
> (1) An offense under this section is a felony of the third degree where:
> (i) the actor was under arrest for or detained on a charge of felony or following conviction of crime .   .
>
> .   .   .   .   .
>
> (2) Otherwise an offense under this section is a misdemeanor of the second degree.

The record below clearly demonstrates that appellant was properly charged with and sentenced for escape as a third degree felony. We therefore affirm.

1. Act of January 25, 1966, P.L. (1965) 1580, § 1 et seq., as amended, 19 P.S. § 1180–1, et seq., as amended (Supp.1977–78).

Briefly, the facts are as follows: In October, 1975, appellant was paroled after serving time on several charges including driving under the influence of intoxicating beverages and driving while under suspension (second or subsequent offense). He was placed under the supervision of the Pennsylvania Board of Probation and Parole and the Adult Probation Department of Lycoming County. Both these boards issued detainers against the appellant on April 12, 1976, for alleged parole violations through consumption of alcoholic beverages, failure to maintain employment, and failure to regularly report. A preliminary revocation hearing was held on April 20, 1976. A final hearing was ordered within ten days, but was never held. However, six days after the preliminary hearing, the trial judge entered an order which permitted appellant's release from prison to seek employment. Having found a job, appellant was placed in the work release program on May 3, 1976. While in this program, appellant was granted a temporary leave from official detention to attend a meeting of Alcoholics Anonymous. He failed to return, and was subsequently charged with escape. Appellant entered a guilty plea and was sentenced to one to two years incarceration.

Appellant contends that the sentence was wrongly imposed because he was not being detained officially by the Commonwealth. The phrase "official detention" is used throughout the statute, and defined in 18 C.P.S.A. § 5121(e):

> (e) Definition.—As used in this section the phrase "official detention" means arrest, detention in any facility for custody of persons under charge or conviction of crime or alleged or found to be delinquent, detention for extradition or deportation, or any other detention for law enforcement purposes; but the phrase does not include supervision of probation or parole, or constraint incidental to release on bail.

Noting the last clause of the definition (i. e. official detention does not include supervision of probation or parole), appellant cites the fact that no final hearing was held on the issue of revocation of his parole. He concludes that his

detention in Lycoming County Prison ceased to be "official" at the expiration of the ten day period for conducting the final revocation hearing because he technically remained on parole.

This novel argument might be persuasive were it not for the words "any other detention for law enforcement purposes" contained in the definition of official detention. By emphasizing his parole status, appellant fails to consider that his participation in work release was official detention. Although no final determination had been made about his parole, his status changed six days after his preliminary hearing, when he was placed in the work release program.

We must determine, then, whether work release is to be construed as official detention for the purpose of the escape statute. Although this question has only been answered by one court in Pennsylvania, the weight of authority in other states supports the holding of that case—that work release certainly is official detention.

*Commonwealth v. Hearn,* 34 D. & C.2d 49 (1964) involved precisely the same issue as is before us here: a county prisoner, engaged in a work release program, failed to return to prison. He was charged with escape under section 309 of the Penal Code, 18 P.S. § 4309.[2] The defendant argued that because no statute expressly provided for penalties for absconding from a work release program, a contrary legislative intent had to be presumed. The court analyzed several statutes dealing with the supervision of prisoners beyond the confines of the prison, and concluded that although the statutes may not have been explicit, their intent was nonetheless clear:

> To the extent that any legislative pattern is discernible from a review of these various enactments, it tends to support the opposite of defendant's present argument. The Act of 1907 is still in effect. In broad terms, it provides for liability for prison breach or escape in the case of any prisoner who escapes or attempts to escape

2. Act of June 24, 1939, P.L. 872, § 309, 18 P.S. § 4309, a predecessor of the present escape statute.

'while employed outside the limits of the said jails or workhouses.' In the various other statutes enacted since 1907 providing for other types of employment outside the prison walls, the legislature has never considered it necessary to repeat this provision, but has merely contented itself with making it clear the inmates were still in custody during their employment.[3]

34 D. & C.2d at 53–54.

Despite the dearth of opinions in this state, courts in other jurisdictions have agreed with the conclusion reached by the *Hearn* court. *See United States v. Hollen,* 393 F.2d 479 (4th Cir. 1968) (federal work release prisoner properly charged with escape); *State v. Eads,* 234 N.W.2d 108 (Iowa 1975) (prisoner on work release remains in constructive custody of county sheriff; departure from that custody is an escape); *State v. Campbell,* 314 A.2d 398 (Maine 1974) (failure to return from employment outside walls of prison is escape); *State v. Walker,* 131 N.J.Super. 547, 330 A.2d 634 (1974) (participation in work release constitutes being in custody); *State v. Furlong,* 110 R.I. 174, 291 A.2d 267 (1972) (prisoner who walked away from work release program is guilty of escape); *State v. Kiggins,* 86 S.D. 612, 200 N.W.2d 243 (1972) (privilege of work release merely extends limits of prisoner's confinement); *Shifflett v. State,* 4 Md.App. 227, 242 A.2d 182 (1968) (leaving work furlough renders prisoner guilty of escape since he was "legally detained and confined"); *People v. Haskins,* 177 Cal.App.2d 84, 2 Cal.Rptr. 34 (1960) (prisoner in work furlough program is guilty of escape for failure to return to jail farm).

Although these cases all involve statutes of different wording, the concept is similar and applicable here: work release programs are a form of "detention for law enforcement purposes."

The procedure which led appellant to his work release status differs from the usual progression to work release;

**3.** The court's statutory reference is to the Act of May 25, 1907, P.L. 247, §§ 1–8, 61 P.S. §§ 184–192, which authorizes employment of inmates outside the prison on various public works projects.

however, this does not alter the *nature* of the restraint. Normally, an inmate is placed on work release after some term of imprisonment has been served—a decrease in the degree of restraint. Appellant went from imprisonment to probation to a probation department detainer, and finally to his work release status—a greater degree of restraint than had been imposed during his probation. But the work release program *was* a restraint, regardless of the degree.

Therefore, as a participant in the county work release program, appellant remained in the official detention of the Commonwealth. In fact, appellant signed a form acknowledging that his status in the work release program subjected him to official detention.[4]

Appellant's second argument goes to the classification of his escape. That offense is a third degree felony under 18 C.P.S.A. § 5121(d)(1)(i) if "the actor was . . . detained . . . following conviction of crime." The court sentenced appellant under that section since he was being detained in the work release program following conviction of several crimes. Appellant again argues that his detention was not official; but it is clear that his work release status did constitute official detention following conviction.

The lower court correctly sentenced appellant with escape classified as a felony of the third degree, and the P.C.H.A. judge correctly dismissed his petition.

Affirmed.

4. The "escape from custody" form signed by appellant read:
   I, the undersigned, understand that as a resident of the Lycoming County Work Release Center, I will be subject to official detention by the Sheriff of Lycoming County and that it is unlawful for me to escape from such detention. I understand that escape includes any unlawful departure, including failure to return to custody after temporary leave granted for a specific purpose or limited periods. I am aware that if I escape from the Lycoming County Work Release Center, I will be prosecuted for a crime punishable by imprisonment in the penitentiary. /s/ Carl Brown