**BRINKER'S INTERNATIONAL, INC., d/b/a Chili's Bar & Grill and Lumberman's Mutual Casualty Company, Petitioners,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (WEISSENSTEIN), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Aug. 21, 1998.

Decided Dec. 10, 1998.

---

Alexander D. Malich, Pittsburgh, for petitioners.

Anthony T. Colangelo, Pittsburgh, for respondent.

1. Section 3731(h) of the Vehicle Code, 75 Pa.C.S.

Before DOYLE, J., KELLEY, J., and RODGERS, Senior Judge.

DOYLE, Judge.

Brinker's International, Inc. (Employer) appeals an order of the Workers' Compensation Appeal Board, which affirmed and modified an order of a Workers' Compensation Judge (WCJ) awarding Todd Weissenstein (Claimant) total disability benefits.

Employer operates a restaurant, Chili's Bar & Grill, and employed Claimant as a cook. On March 25, 1995, Claimant slipped on a wet floor in the restaurant, jamming the thumb on his right hand. A supervisor transported Claimant to a hospital emergency room, where Claimant's hand was examined and placed in a cast. The cast remained on Claimant's hand for six weeks, and, when it was removed, Claimant returned to work. However, Claimant could only work for one day because of pain in his hand.

On May 12, 1995, Claimant filed a claim petition, which asserted that he sustained a broken hand and damaged wrist in the course of his employment on March 25, 1995, and petitioned for total disability benefits. Thereafter, hearings were scheduled before the WCJ.

Before the hearings began, Claimant came under the care of Dr. Glenn Buterbaugh, who, on July 14, 1995, performed surgery on Claimant's right wrist and thumb, and placed Claimant's hand in a cast. Previous to this Claimant also had been convicted of driving under the influence, and, on August 1, 1995, Claimant was incarcerated at ARC House, a detention and alcohol recovery facility for individuals convicted of such offenses.

The first hearing in this matter was conducted on August 2, 1995, and Claimant testified to the facts involving his injury and subsequent medical treatment. He stated that, at that time, his surgeon had not released him to return to work. Furthermore, with regard to his incarceration, Claimant indicated that he was sentenced to ARC House for a period of six months. Claimant testified, however, that he was eligible for work release [1]:

§ 3731(h), allows motorists convicted of driving

Q. Does ARC House allow you to have work release?

A. Yes, they do.

Q. –to have a job and be released from ARC House for the periods of time that you are supposed to be working?

A. Yes.

Q. You haven't done that now because you haven't been able to go back to work, right?

A. That's correct.

Q. Is it your intention that once you are released to go back to work that you get work release through ARC House?

A. Definitely.

(Notes of Testimony (N.T.), 8–2–95, at 17.)

The WCJ conducted a second hearing on December 4, 1995, at which Claimant testified that Dr. Buterbaugh released him to return to work with Employer on a trial basis without restrictions during the second week of November of 1995. Claimant also stated that he contacted Employer after being released by his doctor for work, but that Employer would not allow him to return without a "better doctor's excuse." As to the terms of the work release program, Claimant testified that he had a twelve-hour per day leave from ARC House for six days per week.

The final hearing was conducted on March 4, 1996. The Claimant testified that he returned to work with Employer shortly before December 25, 1995, while he was still in the program at ARC House. Claimant also introduced the report of Dr. Buterbaugh, dated September 21, 1995, who opined that Claimant suffered a fracture of his right thumb and a wrist injury as a result of his March 25, 1995 accident. Dr. Buterbaugh indicated in his September 21st report that Claimant was disabled from "March 25, 1995, to the present time."

Based on the above evidence, the WCJ determined that Claimant sustained a work-related injury to his right thumb and wrist on March 25, 1995, which rendered him totally disabled. The WCJ granted Claimant benefits for a closed period of time from March 25, 1995 to July 31, 1995. However, because Claimant was incarcerated for six months beginning on August 1, 1995, the WCJ suspended Claimant's benefits under Section 306(a)(2) of the Workers' Compensation Act (Act)[2], which provides that "[n]othing in this [A]ct shall require payment of compensation for any period during which the employe is incarcerated after a conviction...." 77 P.S. §511(2). The WCJ concluded that Claimant's incarceration at ARC House, even with the availability of work release, did not mandate a different result under this portion of the Act. The WCJ further suspended Claimant's benefits after November 14, 1995, the date Dr. Buterbaugh released Claimant to return to work, for the reason that Claimant failed to establish a continuing disability after that date.

Claimant appealed to the Board, which modified the WCJ's order. The Board rejected the WCJ's reasoning on the applicability of Section 306(a)(2) of the Act, holding that it did not apply to Claimant, because he was eligible for work release and, therefore, his incarceration did not constitute a voluntary removal from the workforce. Thus, the

---

under the influence of alcohol to be assigned to work release:

> **(h) Work release**—In any case in which a person is sentenced to a period of imprisonment as a result of a conviction for violating any provision of this section, the judicial officer imposing that sentence shall consider assigning that person to a daytime work release program pursuant to which the person would be required to collect litter from public and private property, especially property which is littered with alcoholic beverage containers.

The Superior Court has concluded that work release under this Section is not limited to litter collection. *Commonwealth v. Snyder*, 385 Pa.Super. 58, 560 A.2d 165 (Pa.Super.1989).

**2.** Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §511(2). The General Assembly in the Act of July 2, 1993, P.L. 190, known as Act 44, amended Section 306(a) and added subsection (2) stating that incarcerated claimants are not entitled to benefits. However, Section 306(a)(2) was completely rewritten by the Act of June 24, 1996, P.L. 350, known as Act 57, and now provides as follows:

> (2) Nothing in this act shall require payment of total disability compensation benefits ... for any period during which the employe is employed or receiving wages.

Board concluded that Claimant's benefits should not have been suspended between August 1, 1995, and November 14, 1995, because he was disabled and there was no statutory impediment because of Section 306(a)(2) of the Act. The Board, however, determined that the WCJ properly suspended Claimant's benefits after November 14, 1995, on the ground that Claimant did not prove a continuing disability thereafter. Accordingly, the Board modified the WCJ's order to grant Claimant benefits for the closed period from March 25, 1995 through November 14, 1995. This appeal by Employer followed.

On appeal, Employer argues that, under Section 306(a)(2) of the Act, Claimant is not entitled to benefits for the period of time that he was first incarcerated for his conviction for driving under the influence of alcohol, regardless of the fact that he was entitled to work release. Claimant did not cross appeal from the Board's order suspending his benefits after November 14th, nor does he argue that he is entitled to benefits after that date.

Prior to the enactment of Act 44 in 1993, there was no express rule prohibiting an incarcerated claimant from collecting workers' compensation benefits. However, by passing Act 44 and creating Section 306(a)(2) of the Act, our General Assembly unambiguously demonstrated its intent to disqualify a claimant from receiving workers' compensation benefits for any period of time during which the claimant is incarcerated after a conviction. *Banic v. Workmen's Compensation Appeal Board (Trans–Bridge Lines, Inc.)*, 664 A.2d 1081 (Pa.Cmwlth.1995), *aff'd* 550 Pa. 276, 705 A.2d 432 (1997). The Legislature did not create an exception in Section 306(a)(2) of the Act for prisoners on work release, and we cannot add an exception to a statute that the Legislature did not see fit to include. *Commonwealth v. Rieck Investment Corp.*, 419 Pa. 52, 213 A.2d 277 (1965); *Department of Transportation, Bureau of Driver Licensing v. Porter*, 157 Pa.Cmwlth. 645, 630 A.2d 945 (Pa.Cmwlth.1993).

Moreover, while this case raises an issue of first impression in workers' compensation

law, we have decided similar issues in the context of unemployment compensation law. In *Kroh v. Unemployment Compensation Board of Review*, 711 A.2d 1093 (Pa.Cmwlth. 1998), we considered whether it was constitutional to disqualify an incarcerated claimant, who was eligible for work release, from receiving unemployment benefits under Section 402.6 of the Unemployment Compensation Law (Law),[3] which provides that "[n]othing in this act shall require payment of unemployment compensation benefits for any weeks of unemployment during which the employe is incarcerated after a conviction." We explained that the General Assembly had a rational basis to disqualify incarcerated claimants from receiving unemployment benefits, even if they were on work release:

> The General Assembly had a legitimate reason not to want prisoners who were incarcerated and living at the taxpayers' expense to receive unemployment compensation just because they were eligible for work release. Moreover, it could have felt that while on work release, because of restrictions necessarily imposed under those programs, prisoners were not sufficiently available for work so as to permit them to have a full range of employment options that other claimants have in pursuing new employment. Finally, in denying a prisoner unemployment, the General Assembly could have sought to advance the valid legislative goal of deterrence of criminal activity. . . .

*Kroh*, 711 A.2d at 1096. Section 402.6 of the Law is very similar to Section 306(a)(2) of the Act, and thus the analysis in *Kroh* is highly relevant and persuasive here.

■ Accordingly, for all the above reasons, we conclude that a claimant who is incarcerated, even though eligible for work release, is nevertheless disqualified under Section 306(a)(2) of the Act from receiving workers' compensation benefits.

Claimant has argued that he should not be deemed to be "incarcerated" within the meaning of the Act, since he was eligible for work release and his imprisonment was not

**3.** Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended*, 43 P.S. 802.6. Section 402.6 was added by the Act of October 30, 1996, P.L. 783.

the cause his loss of earning power. We cannot agree in view of the language of Section 306(a)(2) of the Act and the legislative intent underlying its adoption.

First, we note that the Legislature did not define the term "incarcerated" in the Act, and the term is generally defined as "imprisonment" or "confinement in a jail or penitentiary." Black's Law Dictionary 760 (6th ed.1990). Although a prisoner on work release is typically granted the privilege of leaving an institution for a limited period of time and is confined for the remainder of the day, we do not believe that the term "incarcerated" in Section 306(a)(2) should be narrowly defined to apply only to prisoners who are confined inside the walls of a jail 100 percent of the time. This is because a prisoner on work release remains in the constructive custody of the Commonwealth, and may be charged with escape if he or she fails to return to the prison or housing facility from outside employment. *Commonwealth v. Brown*, 261 Pa.Super. 240, 396 A.2d 377 (Pa.Super.1978). Hence, we conclude that Claimant is "incarcerated" for purposes of Section 306(a)(2) of the Act, regardless of his eligibility for work release.[4]

Second, when a claimant is incarcerated, his or her loss of earning power is caused by the imprisonment, not by the work-related injury, and thus benefits may be suspended. *Banic v. Workmen's Compensation Appeal Board (Trans–Bridge Lines, Inc.)*, 550 Pa. 276, 705 A.2d 432 (1997) (*Banic II*). And, it is not the employer who has the burden of showing that an incarcerated claimant has recovered some earning power or that available jobs were referred to the claimant, but, in light of *Banic II*, it is the **claimant** who has the burden of proving that he was, even while disabled, nonetheless available for work despite his six-month sentence. Claimant has failed to establish that in this case.

The critical time period for our analysis is from August 1, 1995, the date when Claimant started his sentence, to the date when Claimant was released to return to work, November 14, 1995. The record reveals that, while Claimant testified that he was eligible for work release, he did not testify that, during the relevant time period, he contacted Employer and asked to return to work, or that he had informed Employer about the details of his work release such as the days and hours he was permitted to leave ARC House. We realize, of course, the contradiction which that creates, because Claimant was still, presumably, disabled and not able to return to work. Although Claimant testified at the December 4, 1995 hearing that Dr. Buterbaugh released him to return to work on a trial basis and that he called Employer and asked to return to his job, this testimony concerns events which occurred *after* November 14, 1995, and is thus not relevant here.

In light of the above, Employer was entitled to a suspension of Claimant's benefits under Section 306(a)(2) beginning August 1, 1995. Accordingly, the Board's order is reversed insofar as it granted Claimant total disability benefits for the period from August 1, 1995 through November 14, 1995, and is modified so as to grant Claimant total benefits for the period between March 21, 1995 and July 31, 1995 only.

### ORDER

**NOW**, December 10, 1998, the order of the Workers' Compensation Appeal Board in the above-captioned matter is hereby reversed insofar as it granted Todd Weissenstein (Claimant) total disability benefits for the period from August 1, 1995, through November 14, 1995. The Board's order is hereby modified to reflect that Claimant is entitled to total disability benefits for the period between March 21, 1995, and July 31, 1995 only.

---

4. Our decision here is consistent with *Graves v. Workmen's Compensation Appeal Board (Newman)*, 668 A.2d 606 (Pa.Cmwlth.1995), which was decided under pre-Act 44 law. In *Graves*, we held that an escaped prisoner, who took a job as roofer and was injured in the course of that employment, was ineligible for benefits, despite the fact that it was clear that the injury was causally related to his employment. We concluded that it "shocks the conscience" to grant an escaped prisoner benefits, even though he was otherwise eligible for compensation.