**Brian MOORE, Petitioner,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (BABCOCK & WILCOX COMPANY), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Aug. 16, 2002.

Decided Nov. 1, 2002.

Reargument Denied Dec. 19, 2002.

---

Wendy K. Ligo, Pittsburgh, for petitioner.

Ned Trbovich, Pittsburgh, for respondent.

BEFORE: FRIEDMAN, Judge, SIMPSON, Judge, and JIULIANTE, Senior Judge.

OPINION BY Judge SIMPSON.

Brian Moore (Claimant) appeals from an order of the Workers' Compensation Appeal Board (Board) that affirmed the Workers' Compensation Judge's (WCJ) grant of Babcock & Wilcox Company's (Employer) suspension petition and reversed the WCJ's grant of Claimant's penalty petition. The WCJ and the Board found that Claimant, while under house arrest, was "incarcerated" and ineligible for benefits under of the Workers' Compensation Act (Act).[1] We affirm.

In July 1994, Claimant began receiving workers' compensation benefits. Since that time, Claimant was convicted of crimes in West Virginia and confined once to jail, once to a rehabilitation facility, and twice to electronically monitored home detention, house arrest.[2] Claimant did not inform Employer of these confinements.

Claimant's house arrest officer testified that in West Virginia an individual on house arrest serves his criminal sentence at his personal residence rather then in a traditional correctional facility. He is required to pay his living expenses and fees covering the cost of the electronic monitoring device.[3] Failure to comply with the rules applicable to house arrest may result in revocation of the house arrest privilege and confinement to a traditional correctional facility. Further, any unauthorized departure by a detainee from his dwelling constitutes criminal escape under the West Virginia crimes code. (Reproduced Record (R.R.) at 310–311R, 347R).

---

1. Act of June 2, 1915, P.L. 736, *as amended* § 1–1041.4; 2501–2626.

2. During the course of the litigation, the parties stipulated to Claimant's periods of restraint as follows: house arrest for 42 weeks five days from October 1995 through August 1996; Shawnee Hills Rehabilitation Center for two weeks from July 1997 through August 1997; Northern Regional Jail/Hancock County Jail for nine weeks three days from late December 1997 through February 1998; and house arrest for 34 weeks one day from July 1998 through March 1999.

3. This device is an ankle bracelet that signals authorities if the detainee attempts to leave his dwelling without permission. In addition to the bracelet, authorities monitor the detainee's behavior through regular telephone contact, personal interviews, drug/alcohol tests, and daily logs. A detainee may leave his dwelling only with permission from his supervising officer. Additionally, a detainee may be granted work release. WCJ Op. of March 7, 2001 at 5.

Upon learning of Claimant's 1998 house arrest, Employer unilaterally suspended Claimant's benefits from July 28, 1998 through October 13, 1998. Employer alleged that Claimant was not eligible to receive benefits under Section 306(a.1) of the Act,[4] because he was "incarcerated," a term the Act does not define.

Claimant filed a reinstatement petition on August 5, 1998, in which he argued that suspension of his benefits was not warranted because house arrest with work release does not constitute "incarceration." Claimant simultaneously filed a penalty petition alleging Employer's unilateral suspension of his July through October 1998 benefits violated the Act.

On May 28, 1999, Employer filed a suspension petition. The WCJ consolidated both parties' petitions and held a hearing. The WCJ found Claimant's house arrest constituted incarceration under the Act. The WCJ further concluded that Claimant was entitled to reinstatement of his benefits at the end of his house arrest. However, the WCJ granted Employer credit for benefits received by Claimant during the periods of incarceration he did not report to Employer. The Board affirmed all aspects of the WCJ's decision except the grant of Claimant's penalty petition. Claimant now appeals to this Court.[5]

■ Claimant, emphasizing his eligibility for work release, argues that his house arrest did not constitute incarceration under the Act. This Court addressed a similar issue in *Brinker's International, Inc. v. Workers' Compensation Appeal Bd. (Weis-*

*senstein),* 721 A.2d 406 (Pa.Cmwlth.1998), where we held a rehabilitation center detainee was incarcerated despite eligibility for work release. We noted that the General Assembly failed to create any exception to the Act for individuals on work release. The Court further stated:

> Although a prisoner on work release is typically granted the privilege of leaving an institution for a limited period of time and is confined for the remainder of the day, we do not believe that the term "incarcerated" in Section 306(a)(2) should be narrowly defined to apply only to prisoners who are confined inside the walls of a jail 100 percent of the time. This is because a prisoner on work release remains in the constructive custody of the Commonwealth, and may be charged with escape if he or she fails to return to the prison or housing facility from outside employment.

*Id.* at 410.

Our Supreme Court approved this reasoning in *Henkels & McCoy, Inc. v. Workers' Compensation Appeal Bd. (Hendrie),* 565 Pa. 493, 776 A.2d 951 (2001). In *Henkels,* the claimant, following a criminal conviction, was found incarcerated under the Act while he resided at a psychiatric hospital. The Court reasoned:

> [W]e do not believe that the General Assembly intended to narrowly limit the term "incarceration" solely to confinement in a penal facility. It is evident that the legislature sought to preclude the payment of workers' compensation

---

4. Added by Section 4 of the Act of June 24, 1996, P.L. 350, 77 P.S. § 511.1. The Section states, in pertinent part, "[n]othing in this act shall require payment of compensation ... for any period during which the employe is incarcerated after a conviction...."

5. This Court's scope of review of a Board's decision is limited to determining whether an

error of law was committed, findings of fact were supported by substantial evidence or constitutional rights were violated. Administrative Agency Law, 2 Pa.C.S. § 704; *Vinglinsky v. Workmen's Compensation Appeal Bd. (Penn Installation),* 139 Pa.Cmwlth.15, 589 A.2d 291 (1991).

benefits to persons who are convicted of violations of the Pennsylvania Crimes Code and who, as a result of those convictions, are thereafter removed from the work force.

565 Pa. at 500, 776 A.2d at 955.

Like those confined to residential inpatient rehabilitation facilities and psychiatric hospitals, an individual on house arrest is in constructive custody. His liberty and movements are significantly limited by security measures. Unauthorized departures from the dwelling may result in criminal sanctions for escape or administrative discipline administered to traditional prison inmates. As such, a house arrest detainee is not eligible to receive benefits while serving his sentence regardless of his eligibility for work release.[6]

Claimant argues entitlement to benefits because, unlike the individuals in *Brinker's Int'l* or *Henkels*, his West Virginia confinement was not at taxpayer expense, since he was responsible for his living expenses and specific fees covering the costs his incarceration. We are not persuaded. In *Flynn v. Workers' Compensation Appeal Bd. (Sovereign Staffing Source, Inc.)*, 776 A.2d 1043 (Pa.Cmwlth.2001), we held a claimant injured on work release should be denied benefits despite a requirement he be employed and self sufficient while residing at a halfway house. Claimant's situation is analogous.

■ Claimant next argues that even if he were "incarcerated," Employer was not permitted to unilaterally suspend his benefits. This issue is controlled by *Banic v. Workers' Compensation Appeal Bd. (Trans–Bridge Lines, Inc.)*, 664 A.2d 1081 (Pa.Cmwlth.1995), *affirmed on other grounds*, 550 Pa. 276, 705 A.2d 432 (1997). The *Banic* Court held that Section 306 is self-executing. Authorization from a WCJ is not required before an employer may suspend benefits during a claimant's incarceration. Employer did not violate the Act by suspending Claimant's benefits, and, therefore, no penalty is justified.

Accordingly, we affirm the decision of the Board.

### ORDER

AND NOW, this 1st day of November, 2002, the decision of the Workers' Compensation Appeal Board is affirmed.

Dissenting Opinion by Judge FRIEDMAN.

I respectfully dissent. The majority holds that Brian Moore (Claimant), while subject to electronic home monitoring (EHM) in West Virginia, was "incarcerated" under section 306(a.1) of the Workers' Compensation Act (Act)[1] and, therefore, was not entitled to workers' compensation benefits for the period of EHM. In so holding, the majority reasons that, although Claimant was eligible for work release, EHM significantly limited Claimant's movements, such that he was in constructive custody.[2] (Majority

---

**6.** In Pennsylvania, house arrest with electronic monitoring is a form of intermediate punishment. 42 Pa.C.S. § 9763(b)(16),(17). The term of intermediate punishment may not exceed the maximum term for which the defendant could be confined. 42 Pa.C.S. § 9763(a).

**1.** Act of June 2, 1915, P.L. 736, *added by* section 4 of the Act of June 24, 1996, P.L. 350, 77 P.S. § 511.1. This particular provision

of the Act states that "[n]othing in this [A]ct shall require payment of compensation ... for any period during which the employe is incarcerated after a conviction...." 77 P.S. § 511.1.

**2.** The majority also considers the fact that Claimant could have been charged with escape in West Virginia for leaving his home without authorization. I note that this matter is not yet settled in Pennsylvania. On Febru-

op. at 5.) I cannot accept the majority's holding because it is inconsistent with our supreme court's construction of section 306(a.1) of the Act and because it is contrary to Pennsylvania case law relating to EHM.

### I. Section 306(a.1)

The Act does not define the meaning of the word "incarcerated" in section 306(a.1) of the Act. Because of the ambiguity of the term, Pennsylvania courts have had to address whether the term refers only to confinement in a jail or prison, whether the term is broad enough to include confinement in a psychiatric hospital, and whether the term encompasses residing in a halfway house with work release privileges. *See Henkels & McCoy, Inc. v. Workers' Compensation · Appeal Board (Hendrie)*, 565 Pa. 493, 776 A.2d 951 (2001); *see also Flynn v. Workers' Compensation Appeal Board (Sovereign Staffing Source, Inc.)*, 776 A.2d 1043 (Pa.Cmwlth.), *appeal denied*, 567 Pa. 749, 788 A.2d 380 (2001); *Brinker's International, Inc. v. Workers' Compensation Appeal Board (Weissenstein)*, 721 A.2d 406 (Pa.Cmwlth.1998).

Of course, the object of all statutory construction is to ascertain and effectuate the intention of the General Assembly. Section 1921(a) of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1921(a). Where, as here, the words of a statute are not explicit, courts may ascertain the intention of the General Assembly by considering, among other matters, the object to be attained. Section 1921(c)(4) of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1921(c)(4). With that in mind, I turn to our supreme court's discussion of the purpose of section 306(a.1) of the Act.

In *Banic v. Workmen's Compensation Appeal Board (Trans–Bridge Lines, Inc.)*, 550 Pa. 276, 286, 705 A.2d 432, 437 (1997), our supreme court stated, "we view [section 306(a.1) of the Act] ... as nothing more than a clarification that a claimant cannot receive benefits while he [is] incarcerated...." Our supreme court explained that, under the law as it existed prior to the enactment of section 306(a.1) of the Act, benefits were permitted only when a claimant's work-related injury resulted in a loss of earning power. *Id.* Thus, benefits were suspended when a claimant was incarcerated because the work-related injury was no longer the cause of the claimant's loss of earning power. *Id.* In other words, the enactment of section 306(a.1) of the Act simply made it clear that, where incarceration is the cause of a claimant's loss of earning power, the claimant is not entitled to benefits.[3]

Thus, the General Assembly intended for the word "incarcerated" to mean "incarcerated in a manner that causes a loss of earning power." Clearly, then, under section 306(a.1) of the Act, a claimant is not entitled to benefits where he is incarcerated in a manner that causes a loss of

---

ary 6, 2002, our superior court filed an opinion holding that a person on EHM may be charged with escape under section 5121 of the Crimes Code, 18 Pa.C.S. § 5121, for leaving home without authorization. *Commonwealth v. Wegley*, 791 A.2d 1223 (Pa.Super.), *appeal granted*, 569 Pa. 706, 805 A.2d 524 (2002). However, on July 30, 2002, our supreme court granted a petition for allowance of appeal and is now reviewing the matter.

**3.** Our supreme court noted that, before the passage of section 306(a.1) of the Act, an employer sought to suspend the payment of benefits to an incarcerated claimant by presenting evidence of available jobs that the employer referred to the claimant. *Id.; see Kachinski v. Workmen's Compensation Appeal Board (Vepco Construction Co.)*, 516 Pa. 240, 532 A.2d 374 (1987). Since the addition of section 306(a.1) of the Act, it is no longer necessary for an employer to produce such evidence.

earning power. However, where a claimant is incarcerated and eligible for work release, i.e., where his incarceration does not cause a loss of earning power, the claimant is entitled to benefits when a work-related injury prevents the claimant from participating in work release.

This position is supported by *Henkels & McCoy*, in which our supreme court provided further guidance regarding the object to be attained by section 306(a.1) of the Act.

It is evident that the legislature sought to preclude the payment of workers' compensation benefits to persons who are convicted of violations of the Pennsylvania Crimes Code *and who, as a result of those convictions, are thereafter removed from the work force.*

*Henkels & McCoy*, 565 Pa. at 500, 776 A.2d at 955 (emphasis added). This language clearly indicates that the General Assembly intended for the word "incarcerated" to mean "incarcerated in a manner that removes one from the work force." Thus, where an incarcerated claimant is eligible for work release, so that the incarceration has *not* removed the claimant from the work force, the claimant is entitled to benefits when a work-related injury prevents the claimant from participating in work release and earning wages as a member of the work force.

In short, a claimant is entitled to benefits when a work-related injury removes a claimant from the work force, causing a loss of earning power. Applying these principles to Claimant, it is apparent that he remained eligible for benefits notwithstanding his "incarceration." Here, because Claimant was on EHM and was eligible for work release, he was not incarcerated in a manner that caused a loss of earning power or in a manner that removed him from the work force. Instead, Claimant's work-related injury caused his loss of earning power and prevented him from being a member of the work force; accordingly, Claimant is entitled to benefits.

## II. Electronic Home Monitoring

The majority reaches a contrary conclusion by reasoning that EHM constitutes "incarceration" under section 306(a.1) of the Act because EHM significantly limits a person's movements, keeping the person in constructive custody. However, the majority's reasoning ignores prior case law holding that EHM does *not* significantly limit a person's movements and does *not* constitute custody.

In *Commonwealth v. Chiappini*, 566 Pa. 507, 782 A.2d 490 (2001) (plurality), our supreme court addressed whether a person on EHM is in custody under section 9760(1) of the Sentencing Code, 42 Pa.C.S. § 9760(1), such that the person is entitled to credit against a prison term for time spent on EHM. The court was divided on this issue. Justice Zappala wrote the lead opinion, joined by Chief Justice Flaherty and Justice Newman, concluding that the time one spends on EHM is time spent in custody because EHM programs severely limit a person's freedom.

Justice Nigro concurred in the result reached by the three justices based on equity and the particular facts of the case. *Id.* (Nigro, J., concurring). However, Justice Nigro disagreed that EHM constitutes custody under section 9760(1) of the Sentencing Code, stating, "I generally frown upon a process that allows people to serve sentences in the comforts of their own home." *Id.* at 527–28, 782 A.2d at 502. Justice Cappy, Justice Castille and Justice Saylor each wrote separate opinions, agreeing with Justice Nigro that a person in an EHM program is *not* in custody.

A defendant in a home confinement program is free to move about in his home,

eat, watch television, sleep in his own bed, socialize with family and friends and otherwise enjoy the comforts of his home at will. Being told the judicial equivalent of "go to your room" in no way approaches being ordered to pack a few belongings, leave that home, and report to a prison cell.

*Id.* at 531–32, 782 A.2d at 504 (Castille, J., concurring and dissenting). Thus, four justices on our supreme court have concluded that EHM does *not* significantly limit a person's movements and does *not* place a person in custody.

One month before our supreme court filed *Chiappini,* this court held that EHM does *not* constitute custody for purposes of section 9760(1) of the Sentencing Code. *Jackson v. Pennsylvania Board of Proba-tion and Parole,* 781 A.2d 239 (Pa.Cmwlth. 2001). This court's position is consistent with that of the four justices in *Chiappini* who reasoned that the restrictions of EHM were not sufficient to make confinement at home custody. *Id.*

Inasmuch as this court and four justices of our supreme court have concluded that the restrictions on a person on EHM are *not* significant enough to constitute custody, I cannot accept the majority's inconsistent view. Accordingly, I would reverse.