**Charles H. CHAMBERLAIN, Petitioner**

**v.**

**UNEMPLOYMENT COMPENSATION BOARD OF REVIEW,
Respondent.**

Commonwealth Court of Pennsylvania.

Argued Dec. 9, 2013.

Decided Jan. 3, 2014.

George R. Studzinski, York, for petitioner.

Gerard M. Mackarevich, Deputy Chief Counsel, and Judith M. Gilroy, Assistant Counsel, Harrisburg, for respondent.

BEFORE: PELLEGRINI, President Judge, McGINLEY, Judge (P.), and McCULLOUGH, Judge.

OPINION BY Judge McCULLOUGH.

Charles H. Chamberlain (Claimant) petitions for review of the March 13, 2013 order of the Unemployment Compensation Board of Review (Board), which affirmed a referee's determination and held that Claimant is ineligible for benefits under section 402.6 of the Unemployment Compensation Law (Law),[1] providing that an employee is ineligible for benefits for any weeks of unemployment during which the employee "is incarcerated after a conviction." 43 P.S. § 802.6. We reverse.

Claimant filed an initial application for unemployment benefits on July 10, 2011, and was found eligible. On October 2, 2012, Claimant pled guilty in Magisterial District Court to operating a vehicle without a valid inspection and driving with a suspended license, both summary offenses. For driving with a suspended license, Claimant was sentenced to sixty days in the Keystone House Arrest Program (KHAP), from November 1 to December 31, 2012, with the conditions that: (1) if he did not comply, he would serve sixty days in county prison; and (2) he attend reemployment eligibility assessment (REA) classes via CareerLink. (Record item # 11, traffic docket). As of November 1, 2012, Claimant was receiving Emergency Unemployment Compensation (EUC).[2]

On November 28, 2012, the local service center issued a notice of determination that Claimant was ineligible for benefits for weeks ending November 3, November 10, and November 17, 2012, under sections 402.6 and 401(d)(1) of the Law.[3] Claimant

1. Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended,* added by the act of October 30, 1996, P.L. 738, *as amended,* 43 P.S. § 802.6.

2. Title IV of the Supplemental Appropriations Act of 2008, P.L. 110–252, 122 Stat. 2323, Section 4001, 26 U.S.C. § 3304 note. Partic-

ipation in REA classes is a prerequisite for EUC eligibility.

3. Section 401(d)(1), 43 P.S. § 801(d)(1), states that a claimant must be able to work and available for suitable work in order to be eligible for benefits.

filed a timely appeal, and a referee held a hearing on January 14, 2013, at which Claimant and Judy Will, an investigator for the Internal Audit Division of the Pennsylvania Department of Labor and Industry (Department), testified.

Will stated that she was assigned to investigate an allegation that Claimant was claiming benefits while on house arrest. (Notes of Testimony (N.T.) at 5.) Will testified that Claimant was very cooperative and provided her with documentation from the court and from KHAP. She observed that had Claimant not been granted house arrest, he would have been in the county prison. Will believed that house arrest is a form of incarceration. Will testified that she understood section 402.6 of the Law to disqualify any individual who has been convicted and then incarcerated, whether the individual is under house arrest, in a halfway house, or any other place "in lieu of" prison. (N.T. at 5–6.) [4]

Claimant testified that he participated in the house arrest program and lived at his sister's house from November 1 to December 31, 2012. He stated that, during that time, he had permission to work as well as to run errands and go Christmas shopping. Claimant testified that he actually worked nine out of the sixty days he was on house arrest and that he reported his work to the local service center. (N.T. at 7–8.) Claimant submitted an activity log reflecting the nine occasions that he went to work. (Claimant's ex. 1.) Claimant also stated that he did not deliberately fail to disclose information when he applied for benefits during that period because he did not believe that he was incarcerated. (N.T. at 9.)

In his closing argument, Claimant's counsel referenced the copy of the court docket submitted into evidence as well as

sections 9721 (sentencing generally) and 9763 (sentence of county intermediate punishment) of the Judicial Code, 42 Pa.C.S. §§ 9721 and 9763, and argued that Claimant was not incarcerated but, rather, was serving an intermediate punishment through a county program in lieu of incarceration. He added that Claimant had always been candid and that there was no basis for finding a fraud overpayment.

Nevertheless, by decision and order dated January 15, the referee held that Claimant was ineligible for benefits under section 402.6 of the Law for claim weeks ending November 3 through December 29, 2012, and assessed a 5–week fraud overpayment of EUC benefits in the amount of $1,719. Addressing Claimant's argument that he was not incarcerated in a prison, the referee "believe[d] that this question has already been answered by the [Law]. Where an inmate serves his incarceration is essentially irrelevant as long as the inmate has been duly convicted of a crime.... For purposes of Section 402.6, the claimant was incarcerated." (Referee's decision at 2–3.) The referee did not cite any decisions by the Board or Pennsylvania courts as support for his conclusions.

Claimant appealed to the Board, arguing that the referee erred in ignoring the evidence that Claimant was under house arrest in lieu of incarceration and that he actually worked 9 days between November 1 and December 31, 2012. Claimant complained that the referee cited no authority contradicting Claimant's reliance on sections 9721 and 9763 of the Judicial Code in support of the conclusion that incarceration means confinement to a correctional institution. Claimant asserted that the referee also erred in failing to find that Claimant was able and available for work

4. The referee apparently shared her understanding, stating "I believe that's the way the Board has interpreted that...." (N.T. at 7.)

under section 401(d)(1). The Board affirmed the referee's decision with respect to section 402.6 of the Law, adopting the referee's findings and conclusions; however, the Board reversed the assessment of penalty weeks, assessing instead a non-fault overpayment.

On appeal to this Court,[5] Claimant argues that house arrest does not constitute "incarceration" under section 402.6 of the Law. Claimant maintains that the Board's contrary holding is overly broad, inconsistent with the plain meaning of the term incarceration as defined by statute and case law, and in conflict with the remedial purpose of the Law.[6]

Section 402.6 of the Law states:

Ineligibility of Incarcerated Employe— An employe shall not be eligible for payment of unemployment compensation benefits for any weeks of unemployment during which the employe is incarcerated after conviction.

43 P.S. § 802.6.

Initially, Claimant emphasizes the well-settled principle that the Law was intended to be remedial in nature and must be liberally construed to achieve its express purpose. *Frumento v. Unemployment Compensation Board of Review,* 466 Pa. 81, 85, 351 A.2d 631, 633 (1976) ("Paramount in our analysis is the realization that this act was intended to be remedial and, thus, should be liberally construed to achieve its express purpose."); *Philadelphia Parking Authority v. Unemployment Compensation Board of Review,* 1 A.3d 965, 968–69 (Pa.Cmwlth.2010) (holding that a claimant was not required to present medical evidence to establish illness as good cause where the broader standard "more effectively comports with this Court's view that the Unemployment Compensation Law must be liberally and broadly construed.")

The Law does not define the term "incarceration." When a statutory definition is not provided, courts must ascertain the intention of the General Assembly regarding the term. 1 Pa.C.S. § 1921;[7] *Younkin v. Bureau of Professional and Occupational Affairs, State Real Estate*

---

5. Our scope of review is limited to determining whether constitutional rights were violated, whether the adjudication is in accordance with the law, or whether the necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704.

6. Because the Department initiated this action to disqualify Claimant from receiving benefits for the weeks at issue, the Department bore the burden of proof in these proceedings. *See Silver v. Unemployment Compensation Board of Review,* 34 A.3d 893, 896 n. 7 (Pa.Cmwlth.2011) (where the bureau initiates proceedings that result in a suspension of benefits because of self-employment, the bureau carries the burden of proof).

7. § 1921. Legislative intent controls.
    (a) *Object and scope of construction of statutes.*—The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. Every statute shall be construed, if possible, to give effect to all its provisions.
    (b) *Unambiguous words control construction.*—When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit.
    (c) *Matters considered in ascertaining intent.*—When the words of a statute are not explicit, the intention of the General Assembly may be ascertained by considering, among other matters:
    (1) The occasion and necessity for the statute.
    (2) The circumstances under which it was enacted.
    (3) The mischief to be remedied.
    (4) The object to be attained.
    (5) The former law, if any, including other statutes upon the same or similar subjects.
    (6) The consequences of a particular interpretation.

*Commission,* 774 A.2d 1281 (Pa.Cmwlth. 2001). In this regard, Claimant notes that prior to the 1996 enactment of section 402.6, a determination of whether an incarcerated person was eligible to receive unemployment benefits was made under section 401(d)(1) of the Law based on whether the claimant was able and available for suitable work. *Greer v. Unemployment Compensation Board of Review,* 38 Pa.Cmwlth. 310, 392 A.2d 918 (1978).

In *Greer,* the claimant was laid off and was receiving benefits when he was incarcerated for violation of a support order. The incarceration order placed the claimant in a prison work-release program and conditioned his release upon his either obtaining employment or paying the support arrearages in full. The only restriction placed upon the claimant's availability for work was that he could not leave the prison alone to *seek* employment. He could pursue any leads, and prison authorities agreed to transport him to and from all job interviews. The claimant actively sought work during the months he was incarcerated but was unable to secure a job. He sought benefits, but a referee determined he was ineligible under 401(d) of the Law on the grounds that he was not free to seek employment and therefore, not realistically attached to the work force. The Board affirmed. On appeal, this Court reversed, concluding that the claimant's mere inability to leave prison alone to seek work did not disqualify him from receiving benefits.

The Court added in *Greer:*

> (7) The contemporaneous legislative history.
> (8) Legislative and administrative interpretations of such statute.

We do not today hold that all prisoners involved in work release programs are eligible for unemployment compensation. Each case must be decided on its own facts. However, where, as here, a claimant was receiving benefits at the time of his incarceration, has placed no restrictions on his availability, has shown a good faith desire to find work, and has actively attempted to find work, coupled with the fact that his release from prison was expressly conditioned upon his obtaining employment, the mere fact that the terms of his incarceration require that he be accompanied by a prison official when he leaves to find work will not justify the denial of benefits.

*Id.* at 314, 392 A.2d 918 (footnotes omitted).

Subsequently, in *Kroh v. Unemployment Compensation Board of Review,* 711 A.2d 1093 (Pa.Cmwlth.1998), the sole case involving the application of section 402.6 of the Law, the claimant appealed the denial of his backdated application for benefits under section 402.6. The claimant had been sentenced to 24 to 59 and 1/2 months in the Perry County Prison and had been returned to prison after violating the conditions of his parole. The claimant did not challenge the Board's interpretation of section 402.6, but contended that it unconstitutionality discriminated against convicted prisoners. On further appeal, we noted that prisoners are not a suspect class and concluded that "[t]he General Assembly had a legitimate reason not to want prisoners *who were incarcerated and living at taxpayers' expense* to receive unemployment compensation just because they were eligible for work release."[8] *Id.* at 1096

---

8. The opinion in *Kroh* considered additional hypothetical reasons the General Assembly could have had, 711 A.2d at 1096, and also speculated that the General Assembly may have intended to overrule our decision in *Greer.* 711 A.2d at 1096 n. 7.

(emphasis added). Thus, we held that "denying [unemployment] benefits to incarcerated prisoners is constitutional." *Id.*

Although our courts have not considered the meaning of the term incarceration under section 402.6 of the Law, the Board asserts that cases decided under section 306(a)(2) of the Workers' Compensation Act (WC Act),[9] have considered essentially the same question and should control our disposition of this appeal. The Board relies on *Brinker's International, Inc. v. Workers' Compensation: Appeal Board (Weissenstein)*, 721 A.2d 406 (Pa.Cmwlth. 1998), as holding that incarceration should not be construed to mean only confinement in a jail. In *Brinker's*, the claimant "was incarcerated at ARC House, a detention and alcohol recovery facility." *Id.* at 407. During hearings on his claim petition, the claimant indicated that he was sentenced to ARC House for a period of six months, but was eligible for work release. The workers' compensation judge (WCJ) granted the claim petition for a closed period, suspending benefits for the period during which the claimant was incarcerated at ARC House. The Workers' Compensation Appeal Board (WCAB) reversed, concluding that because the claimant was eligible for work release, his incarceration did not constitute a voluntary removal from the work force rendering him ineligible for benefits under section 306(a)(2) of the WC Act.

Ultimately, this Court held in *Brinker's* that section 306(a)(2) unambiguously demonstrates a legislative intent "to disqualify a claimant from receiving workers' compensation benefits for any period of time during which the claimant is incarcerated after a conviction.... The Legislature did not create an exception ... for prisoners

on work release, and we cannot add an exception to the statute that the Legislature did not see fit to include." *Id.* at 409 (citations omitted). Quoting *Kroh,* we stated:

The General Assembly had a legitimate reason not to want prisoners who were incarcerated and living at the taxpayers' expense to receive unemployment compensation just because they were eligible for work release. Moreover, it could have felt that while on work release, because of restrictions necessarily imposed under those programs, prisoners were not sufficiently available for work so as to permit them to have a full range of employment options that other claimants have in pursuing new employment. Finally, in denying a prisoner unemployment, the General Assembly could have sought to advance the valid legislative goal of deterrence of criminal activity....

*Brinker's,* 721 A.2d at 409 (quoting *Kroh,* 711 A.2d at 1096). Noting that section 402.6 of the Law is very similar to section 306(a)(2) of the WC Act, we relied on our analysis in *Kroh* to hold that "a claimant who is incarcerated, even though eligible for work release, is nevertheless disqualified under Section 306(a)(2) of the [WC Act] from receiving workers' compensation benefits." *Brinker's,* 721 A.2d at 409.

Like section 402.6 of the Law, the relevant provision of the WC Act does not define the term "incarcerated" and the claimant in *Brinker's* argued that he should not be deemed to be incarcerated based on his eligibility for work release. We first observed that a prisoner on work release remains in the constructive custody of the Commonwealth, and may be charged with escape if he fails to return

---

9. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 512(2), stating that "[n]othing in this act shall require payment of total disability compensation benefits for any period during which the employe is incarcerated after a conviction."

from outside employment. Second, and significantly, we observed that when a claimant is incarcerated, his "loss of earning power is caused by the imprisonment, not by the work-related injury," *id.* at 410, an essential element in a claimant's burden of proof. Accordingly, in *Brinker's* we rejected the claimant's assertion that eligibility for work release precluded the application of section 306(a)(2) and concluded that the claimant was incarcerated for purposes of the WC Act.

Thereafter, in *Henkels & McCoy, Inc. v. Workers' Compensation Appeal Board (Hendrie)*, 565 Pa. 493, 776 A.2d 951 (2001), our Supreme Court held that a claimant, who was sentenced to five years' probation with the condition that he be involuntarily committed to a psychiatric facility, was "incarcerated" for purposes of the WC Act while he resided at the psychiatric hospital. "It is evident that the legislature sought to preclude the payment of workers' compensation benefits to persons who are convicted of violations of the Pennsylvania Crimes Code and who, as a result of those convictions, are thereafter removed from the work force." *Id.* at 500, 776 A.2d at 955.

Relying on *Henkels*, in *Moore v. Workers' Compensation Appeal Board (Babcock & Wilcox Co.)*, 811 A.2d 631 (Pa.Cmwlth. 2002), this Court affirmed the prior determinations of a WCJ and the WCAB that the claimant, while under house arrest, was "incarcerated" and ineligible for benefits under the WC Act. The claimant in *Moore* began receiving workers' compensation benefits in July 1994. Thereafter, the claimant was convicted of crimes in West Virginia, where he was confined once to jail, once to a rehabilitation facility, and twice to electronically monitored home detention. The claimant's house arrest officer testified that the claimant was required to pay his living expenses and fees to cover the cost of the electronic monitoring device. He explained that any unauthorized departure by a detainee from his dwelling constitutes criminal escape under West Virginia law. The Court noted that a detainee may leave his dwelling only with permission of his supervising officer. "Additionally, a detainee may be granted work release." *Id.* at 632 (citing the WCJ's opinion).

Relying on *Brinker's* and *Henkel's & McCoy*, we held in *Moore* that a claimant was ineligible for workers' compensation benefits while he was sentenced to house arrest, regardless of his eligibility for work release, where the house arrest significantly limited the claimant's liberty and subjected him to sanctions for unauthorized departures. We noted the Supreme Court's reasoning in *Henkel's & McCoy*:

It is evident that the legislature sought to preclude the payment of workers' compensation benefits to persons who are convicted of violations of the Pennsylvania Crimes Code **and who, as a result of those convictions, are thereafter removed from the work force.**

*Moore*, 811 A.2d at 633–34 (quoting *Henkel's & McCoy*, 565 Pa. at 500, 776 A.2d at 955 (emphasis added)). We concluded in *Moore* as follows:

Like those confined to residential inpatient rehabilitation facilities and psychiatric hospitals, an individual on house arrest is in constructive custody. His liberty and movements are significantly limited by security measures. Unauthorized departures from the dwelling may result in criminal sanctions for escape or administrative discipline administered to traditional prison inmates. As such, a house arrest detainee is not eligible to receive benefits while serving his sentence regardless of his eligibility for work release.

*Id.* at 634. The Board contends that the analysis in *Moore,* and the workers' compensation cases upon which it relies, is applicable here and compels the conclusion that Claimant in this case is ineligible for unemployment benefits.

Claimant argues that an interpretation of section 402.6 of the Law as including any sentence that places an individual in the constructive custody of the Commonwealth without regard to whether an individual is actually confined in an institution is inconsistent with the Rules of Statutory Construction. Further, Claimant notes that section 9721 of the Judicial Code provides for various sentencing alternatives, including probation, partial confinement, total confinement, a fine, county intermedi-

ate punishment, and state intermediate punishment. Section 9762(d) of the Judicial Code provides for a sentence of county intermediate punishment, stating: "[n]othing in this section shall prevent a judge from sentencing an offender to county intermediate punishment which does not require confinement within county prison if otherwise authorized by law." 42 Pa.C.S. § 9762(d). Section 9763 provides for a sentence of county intermediate punishment as an alternative to confinement in a correctional institution; significantly, its provisions distinguish house arrest with electronic surveillance from both a residential inpatient program or rehabilitation center and a partial confinement program such as work release, work camp, and a halfway facility.[10]

**10.** In its entirety, section 9763 of the Judicial Code states as follows:

§ 9763. Sentence of county intermediate punishment.

(a) *General rule.*—In imposing a sentence of county intermediate punishment, the court shall specify at the time of sentencing the length of the term for which the defendant is to be in a county intermediate punishment program established under Chapter 98 (relating to county intermediate punishment) or a combination of county intermediate punishment programs. The term may not exceed the maximum term for which the defendant could be confined and the program to which the defendant is sentenced. The court may order a defendant to serve a portion of the sentence under section 9755 (relating to sentence of partial confinement) or 9756 (relating to sentence of total confinement) and to serve a portion in a county intermediate punishment program or a combination of county intermediate punishment programs.

(b) *Conditions generally.*—The court may attach any of the following conditions upon the defendant as it deems necessary:

(1) To meet family responsibilities.

(2) **To be devoted to a specific occupation or employment.**

(3) To participate in a public or nonprofit community service program.

(4) To undergo individual or family counseling.

(5) To undergo available medical or psychiatric treatment or to enter and remain in a specified institution, when required for that purpose.

(6) **To attend educational or vocational training programs.**

(7) To attend or reside in a rehabilitative facility or other intermediate punishment program.

(8) To refrain from frequenting unlawful or disreputable places or consorting with disreputable persons.

(9) To not possess a firearm or other dangerous weapon unless granted written permission.

(10) To make restitution of the fruits of the crime or to make reparations, in an affordable amount, for the loss or damage caused by the crime.

(11) **To be subject to intensive supervision while remaining within the jurisdiction of the court and to notify the court or designated person of any change in address or employment.**

(12) To report as directed to the court or the designated person and to permit the designated person to visit the defendant's home.

(13) To pay a fine.

(14) To participate in drug or alcohol screening and treatment programs, including outpatient and inpatient programs.

(15) To do other things reasonably related to rehabilitation.

As reflected in this statute, house arrest is clearly an alternative to confinement in an institution, including a partial confinement program such as work release. Claimant argues that to equate his living at his sister's house subject to electronic monitoring, but without restriction on his ability to work, with confinement at a correctional institution makes no sense and ignores the confinement alternatives recognized by the legislature.

Claimant also notes that our Supreme Court has specifically held that house arrest is not equivalent to imprisonment for purposes of credit for time served. *Commonwealth v. Kriston*, 527 Pa. 90, 588 A.2d 898 (1991). The specific issue before the court in *Kriston* was whether, for purposes of determining eligibility for parole, time spent in an electronic home monitoring program should be counted towards a mandatory minimum sentence of imprisonment.

The term "imprisonment" was not defined by the legislature, so it must be construed in accordance with its common and ordinary meaning. See 1 Pa. C.S. § 1903(a) (Statutory Construction Act of 1972); *Commonwealth v. Sojourner*, 513 Pa. 36, 41, 518 A.2d 1145, 1147 (1986) (statutory language is to be construed in accordance with its plain meaning). We believe it would grossly distort the language used by the legislature if we were to conclude that the term "imprisonment" means merely "staying at home." The plain and ordi-

(16) To remain within the premises of the defendant's residence during the hours designated by the court.

(17) To be subject to electronic monitoring.

(c) *Restriction.*

(1) Any person receiving a penalty imposed pursuant to 75 Pa.C.S. § 1543(b) (relating to driving while operating privilege is suspended or revoked), former 75 Pa.C.S. § 3731 (relating to driving under influence of alcohol or controlled substance) or 75 Pa.C.S. § 3804 (relating to penalties) for a first, second or third offense under 75 Pa. C.S. Ch. 38 (relating to driving after imbibing alcohol or utilizing drugs) may only be sentenced to county intermediate punishment after undergoing an assessment under 75 Pa.C.S. § 3814 (relating to drug and alcohol assessments).

(2) If the defendant is determined to be in need of drug and alcohol treatment, the defendant may only be sentenced to county intermediate punishment which includes participation in drug and alcohol treatment under 75 Pa.C.S. § 3815(c) (relating to mandatory sentencing). The defendant may only be sentenced to county intermediate punishment in:

(i) **a residential inpatient program or a residential rehabilitative center;**

(ii) **house arrest with electronic surveillance;**

(iii) **a partial confinement program such as work release, work camp and halfway facility; or**

(iv) any combination of the programs set forth in this paragraph.

(3) If the defendant is determined not to be in need of drug and alcohol treatment, the defendant may only be sentenced to county intermediate punishment in:

(i) **house arrest with electronic surveillance;**

(ii) **partial confinement programs such as work release, work camps and halfway facilities; or**

(iii) any combination of the programs set forth in this paragraph.

(d) *Sentence following violation of condition.*—The sentence to be imposed in the event of the violation of a condition under subsection (b) shall not be imposed prior to a finding on the record that a violation has occurred. Notwithstanding any other provision of law requiring notice prior to sentencing, in the event of a violation of a condition under subsection (b), the attorney for the Commonwealth may file notice at any time prior to resentencing of the Commonwealth's intention to proceed under an applicable provision of law requiring a mandatory minimum sentence.

42 Pa.C.S. § 9763 (emphasis added).

nary meaning of imprisonment is confinement in a correctional or similar rehabilitative *institution*, not staying at home. The qualitative differences in treatment experienced by one who is confined in an institution, as opposed to one who merely stays at home, are too numerous and obvious to require elaboration. The legislature would not have intended that its use of the term "imprisonment" would be so diluted in effect as to encompass home monitoring programs.

*Kriston*, 527 Pa. at 93–94, 588 A.2d at 899–900.

Our Supreme Court reaffirmed its conclusion in *Kriston* in *Commonwealth v. Kyle*, 582 Pa. 624, 874 A.2d 12 (2005). After reviewing a line of cases the court noted, "[i]t is clear that for over a decade, Pennsylvania courts have determined, as matter of statutory construction, that criminal defendants are not entitled to credit against a sentence of imprisonment for time spent subject to home monitoring programs.... **This Court has emphasized that, because home release to electronic monitoring does not constitute custody,** credit should not be awarded for it toward a prison sentence." *Id.* at 634, 874 A.2d at 18 (emphasis added) (citations omitted).

In this matter of first impression, our effort to reconcile these decisions must be guided by the well-settled principle that the Law was intended to be remedial in nature and must be liberally construed to achieve its express purpose, *Frumento*, which is to protect workers who have suffered a loss of income due to separation from employment through no fault of their own. Section 3 of the Law (declaration of public policy), 43 P.S. § 752; *Preservation Pennsylvania v. Unemployment Compen-*

*sation Board of Review*, 673 A.2d 1044 (Pa.Cmwlth.1996).

The precise question we must answer is whether, after Claimant established that he satisfied the eligibility criteria of the Law, he is rendered ineligible for benefits on the basis that his house arrest constituted incarceration under section 402.6 of the Law. We note, most importantly, that unlike the circumstances described by the Court in *Moore*, the terms of Claimant's house arrest place no restriction on his ability to work. Thus, the rationale employed in *Moore* and in *Henkels & McCoy*—that the General Assembly intended to preclude payment of workers' compensation to persons who have been removed from the work force—is not applicable here. Likewise, the concerns expressed in *Brinker's* and *Kroh*, that prisoners were not sufficiently available for work, are not present in this case.

Additionally, mindful of the Law's remedial purpose, we must recognize the distinctions between the WC Act and the Law. Under the former, a claimant is entitled to compensation for a loss of earning power that is caused by a work injury. Under the latter, a claimant is provided economic security when he demonstrates, generally, that he is unemployed through no fault of his own and that he is able and available for work. Where our Supreme Court has held that house arrest is not equivalent to incarceration for purposes of sentence credit, it would contravene the remedial purpose of the Act to interpret that term differently in the circumstances presented here.

To be clear, we do not hold that an individual sentenced to house arrest is eligible for unemployment benefits as a matter of law. Rather, we hold that house arrest is not "incarceration" that renders a claimant ineligible for unemployment com-

pensation under section 402.6 of the Law.[11] Regardless of whether Claimant's liberty and movements were limited by security measures, *Moore,* 811 A.2d at 633, the record reflects that the terms of Claimant's house arrest did not impact his ability to go to work. Stated otherwise, there is no evidence that Claimant was not genuinely attached to the labor market. In fact, although the Department bore the burden of proof in this proceeding, Claimant was the only party to present evidence concerning the circumstances of his house arrest, and his unrebutted testimony and documentary evidence lend no support to the Department's position. For the reasons set forth above, we reject the Department's contention that such evidence is irrelevant.

Accordingly, we reverse.

### *ORDER*

AND NOW, this 3rd day of January, 2014, the order of the Unemployment Compensation Board of Review, dated March 13, 2013, is reversed.

---

11. Our holding does not affect determinations that consider whether a claimant under house arrest is subject to terms and conditions that disqualify him under other provisions of the Law.