# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Carl Sadler, : 
                     Petitioner : 
                                 : 
            v.                   : No. 328 C.D. 2018
                                 : Argued: November 15, 2018
Workers' Compensation Appeal      : 
Board (Philadelphia Coca-Cola),   : 
                     Respondent  : 

**BEFORE:**     HONORABLE RENÉE COHN JUBELIRER, Judge[1]
                HONORABLE ANNE E. COVEY, Judge (P.)
                HONORABLE CHRISTINE FIZZANO CANNON, Judge


**OPINION BY**
**JUDGE COHN JUBELIRER**                     **FILED:  May 22, 2019**


Carl Sadler (Claimant) petitions for review of the February 16, 2018 Order of the Workers' Compensation (WC) Appeal Board (Board) that affirmed, as modified, the Decision of the Workers' Compensation Judge (WCJ).  The WCJ denied in part Claimant's Petition to Review WC Benefits (Review Petition) because Claimant failed to establish that his average weekly wage (AWW) was incorrectly calculated, and granted Philadelphia Coca-Cola's (Employer) Petition to Suspend WC Benefits (Suspension Petition) for 525 days on the basis that Claimant, under Section 306(a.1) of the WC Act,[2] was "incarcerated after a

---

[1] This case was reassigned to the authoring judge on February 13, 2019.

[2] Under Section 306(a.1) of the WC Act, Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.4, 2501-2710, an employer is not required to pay WC benefits "for any period during which the employe is incarcerated after a conviction."  77 P.S. § 511.1.  Section 306(a.1) of the Act was added by Section 4 of the Act of June 24, 1996, P.L. 350.

conviction."[3]  On appeal, Claimant raises two issues.  First, he argues that the WCJ incorrectly calculated his AWW because there is not substantial evidence that he was expected to work only 40 hours per week.  Second, Claimant argues that it was error to suspend his benefits because he spent 525 days in **pretrial** incarceration, which, upon his conviction, was credited as time served, and this time does not meet the statutory requirement, "any period during which [he was] incarcerated **after** a conviction."   77 P.S. § 511.1 (emphasis added).   We find merit in Claimant's arguments.  The credited testimony was that Claimant was expected to work overtime during the summer, which the WCJ did not consider in calculating Claimant's AWW.   Moreover, under the plain language of Section 306(a.1), incarceration that occurs **before** a conviction, due to the inability to meet bail, is not a "period during which the employe is incarcerated **after** a conviction," and such an interpretation would be inconsistent with the fundamental principles underlying the WC Act and its purpose.  *Id.*   Therefore, we will remand for a recalculation of Claimant's AWW, and will reverse the suspension of Claimant's WC benefits.

## I.  Factual and Procedural Background

### A. Petitions

On July 2, 2012, Claimant sustained an injury while working as a production manager with Employer.  Employer issued a Notice of Temporary Compensation Payable, which was subsequently converted, as a matter of law, to a Notice of

---

[3] The Board modified the WCJ's Decision to the extent it allowed Employer to recover total disability compensation paid to Claimant during his incarceration via a credit against future WC disability payments, rather than through the Supersedeas Fund.

2

Compensation Payable (NCP). The NCP recognized Claimant's injuries as right pinky finger amputation and low back sprain, entitling Claimant to a weekly disability rate of $652 based upon an AWW of $978.

On April 7, 2015, Claimant filed the Review Petition claiming that his AWW was miscalculated in violation of Section 309(d.2) of the WC Act[4] and that his AWW should have been no less than $1412.04, thereby entitling him to the maximum weekly disability rate of $888. Claimant also alleged an incorrect description of injury.[5] Claimant further sought penalties for Employer's miscalculation of his AWW.

On May 12, 2015, Employer filed the Suspension Petition, claiming that Claimant's benefits should be suspended because he spent 525 days in jail prior to his conviction and because he was credited with having served that time upon his conviction on January 22, 2015, Claimant should not be unjustly enriched and his benefits should be adjusted accordingly.

### B. Hearings Before the WCJ

At the hearing before the WCJ, Claimant testified that at the time of his injury, he had been working for Employer for about four weeks. His normal rate

---

[4] Section 309(d.2) was added by the Act of June 24, 1996, P.L. 350, and provides,

> If the employe has worked less than a complete period of thirteen calendar weeks and does not have fixed weekly wages, the average weekly wage shall be the hourly wage rate multiplied by the number of hours the employe was expected to work per week under the terms of employment.

77 P.S. § 582(d.2).

[5] The parties later stipulated that Claimant sustained additional injuries as a result of his work accident. (Certified Record (C.R.) Item 30, Stipulation of Facts.)

of pay was $24.45 per hour. Typically, he worked for 10 hours a day from 5:30 a.m. until 3:30 p.m. for 6 days a week, or 60 hours a week. When he met with Dennis Veneri, who hired Claimant, Claimant was told to expect to work 10 hours a day, 6 days a week, at $24.45 an hour. There was never a week he did not work overtime, Claimant testified. In the summer, because of increased supply and demand, Claimant was told he would work in excess of 60 hours. He was never told that during the summer he would work 60 hours and, thereafter, his hours would be reduced. A Statement of Wages indicated, however, that Claimant worked 40 hours per week. Claimant stated that the Statement of Wages was inaccurate. Pay stubs entered into evidence indicated the following:

| Week | Regular Hours | Overtime Hours | Total Hours |
|------|---------------|----------------|-------------|
| 6/12/12-6/17/12 | 34.5 | 5 | 39.5 |
| 6/18/12-6/24/12 | 40 | 22.52 | 62.52 |
| 6/25/12-7/01/12 | 40 | 10.02 | 50.02 |
| 7/02/12-7/08/12 | 10 | 0 | 10 |

(Certified Record (C.R.) Items 23, 27.)

Veneri testified that Employer employed him as Director of Maintenance for the Philadelphia Erie Facility, a position he held for five years. Veneri was involved in the hiring of employees. Veneri hired Claimant to work as a maintenance mechanic. The normal working hours are 4 10-hour shifts, but during the busy season, employees will work an extra day or 2 days for another 10-hour shift. In response to the question by Employer "[h]ow many hours was [Claimant] expected to work per week under the terms of his employment," Veneri answered "it was a four ten-hour shift, but it was explained to [him] that there could and

4

probably would be overtime because it was the busy time of the year when he was hired." (C.R. Item 20, Hr'g Tr., Oct. 22, 2015, at 6.) In response to the question of "would that overtime be guaranteed overtime," Veneri answered, "In the busy season more than likely yes, because it was busy." (*Id.*) Veneri clarified that the busy season is "typically the hundred days of summer." (*Id.*) For overtime, Veneri noted, an employee received time and a half. Outside of summer, sometimes there was still overtime, depending on the schedule. Veneri noted that Claimant's paychecks showed that Claimant was paid a "job premium" rate, which was .35 cents per hour, and a "job premium overtime" rate, which was .525 cents; this reflected, Veneri testified, that Claimant was paid "a little extra" for working 10-hour shifts. (*Id.* at 9-11.)

Regarding Claimant's incarceration, the parties stipulated that Claimant was first incarcerated on August 16, 2013, when, upon being charged, he could not meet bail. On January 22, 2015, Claimant pleaded guilty and was sentenced to 525 days time served. He received credit for the 525 days he spent incarcerated prior to his conviction and, therefore, was released from incarceration on January 22, 2015, the date of his conviction. (*Id.* at 18-19.)

### C. The WCJ's Decision

The WCJ granted the Review Petition in part and denied it in part and granted Employer's Suspension Petition. (WCJ Decision, Conclusions of Law (COL) ¶¶ 2-4.) The WCJ granted the Review Petition to the extent Claimant alleged he sustained additional injuries[6] as a result of his work accident, which

---

[6] The additional injuries were as follows:

**(Footnote continued on next page…)**

5

Employer acknowledged in a Stipulation of Facts. (WCJ Decision, Findings of Fact (FOF) ¶¶ 22-23; C.R. Item 30, Stipulation of Facts ¶ 3.) The WCJ denied the Review Petition to the extent Claimant alleged that his AWW was incorrectly calculated.[7] (*Id.* ¶ 16.) The WCJ found no dispute as to the authenticity of the pay stubs and that they were "a credible and accurate representation of the hours" Claimant worked. (*Id.* ¶ 9.) However, the WCJ did not credit Claimant's testimony on this issue, instead crediting Veneri's testimony. (*Id.* ¶¶ 12-13.) The WCJ explained that having viewed Claimant's "demeanor and comportment" and considered that Claimant acknowledged that Employer expected all employees to work overtime if requested and that Claimant's paystubs did not reflect "a base of sixty hours per week," Claimant was not credible on the number of hours he was expected to work each week. (*Id.* ¶ 12.) Veneri, in contrast, was credible, the WCJ found, because, having viewed "his demeanor and comportment," and considering the years he spent hiring potential employees for Employer, he was the "the best individual to know the terms of employment for a mechanic in the Maintenance Department" of Employer. (*Id.* ¶ 13.) Therefore, the WCJ concluded, Claimant "was hired to work a forty-hour work week with probable overtime during the busy season or 100 days of summer." (*Id.* ¶ 14.) The WCJ

---

**(continued…)**

distal radioulnar joint subluxation, ECU tendinopathy, pisotriquetral joint arthritis resulting in pisiform excision, right wrist DRUJ resection, right transverse process fractures of L2-3 and L4, contusion to right gluteal region/right hip, fracture of the right 6th rib, and right leg radiculitis in addition to the previously accepted right pinky finger amputation and low back sprain.

(C.R. Item 30, Stipulation of Facts ¶ 3.)

[7] The WCJ did not explicitly address Claimant's request for an award of penalties.

further found "Claimant actually worked on average a forty-hours [sic] during the short time he worked for the Employer prior to his injury." (*Id.* ¶ 15.)

On the incarceration issue, the WCJ concluded that Employer was entitled to reimbursement for benefits paid to Claimant during the 525 days Claimant was incarcerated. (*Id.* ¶ 21.) The WCJ ordered that Employer not be given a future credit against benefits to be paid to Claimant, but that Employer petition the Supersedeas Fund for reimbursement. (COL ¶ 4.)

### D. The Board's Opinion

Employer appealed and Claimant cross-appealed from the WCJ's Decision to the Board. The Board modified the WCJ's Decision by allowing Employer to seek reimbursement for total disability compensation paid to Claimant while he was incarcerated via a credit against future disability payments to Claimant rather than requiring Employer to seek reimbursement through the Supersedeas Fund. (Board Op. at 10.) The Board otherwise affirmed the WCJ's Decision.[8]

### II. Appeal to this Court

On appeal,[9] Claimant raises two issues for our consideration. First, he argues that the WCJ incorrectly calculated his AWW because there is not substantial evidence that he was expected to work only 40 hours per week but that,

---

[8] The Board noted that the WCJ did not explicitly address Claimant's request for an award of penalties, but noted that since there was no miscalculation, there was no violation of the WC Act and, therefore, no basis for an award of penalties.

[9] "Our review is limited to determining whether an error of law was committed, whether necessary findings of fact are supported by substantial evidence[,] and whether constitutional rights were violated." *Moberg v. Workers' Comp. Appeal Bd. (Twining Vill.)*, 955 A.2d 385, 388 n.1 (Pa. Cmwlth. 2010).

7

at least during the summer, he was expected to work overtime; second, he argues that it was error to suspend his benefits because he spent 525 days in pretrial incarceration, which, upon his conviction, was credited as time served, and this time does not meet the statutory requirement "any period during which [he was] incarcerated after a conviction." 77 P.S. § 511.1.

### A. AWW Calculation

Claimant argues that there is not substantial evidence[10] to support the WCJ's Decision that he was expected to work only 40 hours per week. Claimant contends his pay stubs are consistent with the credited testimony of Veneri that Claimant was required to, and did, work overtime, at least during the busy season. In the 3 full weeks preceding his work-related injury, Claimant averaged 50.68 hours of work. By including in the calculation Claimant's last week, in which he worked only 10 hours before being injured, Claimant argues the WCJ "artificially deflated his average hours per week" resulting in an average of 40.51 hours. (Claimant's Brief (Br.) at 17 (emphasis omitted).) At the very least, Claimant argues, this overtime should have been taken into account in one 13-week period and then averaged with a 26-week period when Claimant was expected to work only 40 hours a week. Further, Claimant contends, the WCJ erred when she neglected to include in her calculation that Claimant was paid a job premium rate and job premium overtime rate.

---

[10] Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Republic Steel Corp. v. Workmen's Comp. Appeal Bd. (Shinsky)*, 421 A.2d 1060, 1062 (Pa. 1980).

Employer argues that the WCJ properly determined Claimant's AWW using Section 309(d.2) of the WC Act. Such a determination, Employer maintains, is a factual one subject to the WCJ's assessment of credibility. The WCJ, Employer notes, credited the testimony of Veneri and discredited Claimant's testimony. The credited testimony is substantial evidence to support the WCJ's finding that Claimant was expected to work 40 hours per week and, therefore, Employer concludes, that finding must be affirmed.

Because Claimant worked less than 13 calendar weeks, and had no fixed weekly wages, Section 309(d.2) of the WC Act applies. Section 309(d.2) provides the AWW is "the hourly wage rate multiplied by the number of hours the employe **was expected to work per week** under the terms of employment." 77 P.S. § 582(d.2) (emphasis added). In interpreting and applying this section, we are cognizant that the General Assembly's intent behind Section 309(d.2) was to cover "those instances of work injuries to recently[]hired employees for whom there was, by definition, no accurate measure of AWW other than taking the existing hourly wage and projecting forward on the basis of the hours of work expected under the employment agreement." *Reifsnyder v. Workers' Comp. Appeal Bd. (Dana Corp.)*, 883 A.2d 537, 547 (Pa. 2005). Section 309(d.2) was part of Act 57,[11] which sought to "ensur[e] more, not less, accuracy in the computation of [AWW]." *Hannaberry HVAC v. Workers' Comp. Appeal Bd. (Snyder, Jr.)*, 834 A.2d 524, 533 (Pa. 2003). Our Supreme Court has instructed that "the baseline figure from which benefits are calculated should reasonably reflect **the economic reality** of a claimant's recent pre-injury earning experience, with some **benefit of the doubt** to be afforded **to the claimant** in the assessment." *Triangle Bldg. Ctr. v. Workers' Comp. Appeal*

---

[11] Act of June 24, 1997, P.L. 350, No. 57.

9

*Bd. (Linch)*, 746 A.2d 1108, 1112 (Pa. 2000) (emphasis added).  Importantly, in this case, "where an employee is **expected to work overtime**, **such overtime should be considered** . . . when calculating the AWW under Section 309(d.2)." *Lahr Mech. v. Workers' Comp. Appeal Bd. (Floyd)*, 933 A.2d 1095, 1101-02 (Pa. Cmwlth. 2007) (citing *Erb v. Workers' Comp. Appeal Bd. (Steris Corp.)*, 812 A.2d 773, 776 (Pa. Cmwlth. 2002)) (emphasis added).

The question of how many hours a claimant was expected to work per week is a question of fact for the WCJ.  *Id.* at 1101.  The authority of the WCJ "over questions of credibility, conflicting evidence and evidentiary weight is unquestioned." *Id.*  Nonetheless, factual findings must be supported by substantial evidence.

While the parties do not dispute that Section 309(d.2) applies here, they do dispute whether Claimant was expected to work more than 40 hours per week.  The WCJ credited the testimony of Employer's witness, Veneri, and found that the pay stubs credibly and accurately reflected the hours worked.  Relevant here, Veneri's response to Employer's question, "[h]ow many hours was [Claimant] expected to work per week under the terms of his employment," was two-fold:  he stated "it was . . . four ten-hour shift[s], but it was explained to [Claimant] that there could and probably would be overtime because it was the busy time of the year when he was hired."  (C.R. Item 20, Hr'g Tr., Oct. 22, 2015, at 6.)  He further testified, in response to Employer's question of "[w]ould that overtime be **guaranteed overtime**," "[i]n the busy season more than likely **yes,** because it was busy."  (*Id.* (emphasis added).)  Veneri quantified the busy season as "typically the hundred days of summer."  (*Id.*)  Veneri's testimony is consistent with Claimant's pay stubs.  Excluding Claimant's last week of work where he was injured and appeared

10

to work only one day, the pay stubs show that he worked overtime hours in each of the three other weeks.

The WCJ specifically found, consistent with this credited testimony and evidence, that "Claimant was hired to work a forty-hour work week with **probable overtime** during the busy season or 100 days of summer." (FOF ¶ 14 (emphasis added).) Yet, the WCJ did not account for **any** award of overtime in calculating Claimant's AWW. Instead, despite this finding and Veneri's testimony regarding overtime during the summer, in the next finding, the WCJ concluded that "Claimant **actually** worked on average a [sic] forty-hours [sic] during the short time he" was employed. (*Id.* ¶ 15 (emphasis added).) In reaching this conclusion, it appears, as Claimant argues, that the WCJ included the week in which Claimant was injured, adding together the total number of hours Claimant worked for 4 weeks (39.5, 62.52, 50.02 and **10**) and dividing that figure (162.04) by 4 to reach a work week of 40.51 hours. We agree with Claimant that the WCJ should not have used the 10-hour work week in the calculation where Claimant's injury, **occurring on a Monday**, prevented him from continuing to work and completing, at the very least, the 40 hours the undisputed evidence showed he was expected to work.

The credited testimony and evidence demonstrated that Claimant worked overtime for every week that he actually worked a complete work week. Yet, the WCJ did not take any overtime into consideration. We have required that overtime be taken into account when calculating a claimant's AWW under Section 309(d.2), *Lahr Mechanical*, 933 A.2d at 1101-02, and therefore the WCJ erred when she did not do so.

In summary, to determine the hours Claimant "actually worked on average," (FOF ¶ 15), requires the calculation to "reflect the economic reality of . . .

11

[C]laimant's recent pre-injury earning experience." *Triangle Bldg. Ctr.*, 746 A.2d at 1112. The WCJ's calculation here did not do so, as it counted as a full work week the pay he received when he was injured on Monday and could not work the rest of the week, and further did not include any overtime hours contrary to the credited testimony and evidence.

Therefore, we must remand to the Board with direction to further remand to the WCJ to recalculate Claimant's AWW,[12] taking into account that Claimant was expected to work overtime during the summer.[13, 14]

### B. Claimant's Pre-Conviction Incarceration

Claimant argues that it was error to suspend his benefits because he was not "incarcerated **after** a conviction," as Section 306(a.1) requires. 77 P.S. § 511.1 (emphasis added). Rather, his incarceration occurred **before** his conviction and was the result of his inability to make bail while awaiting trial. Claimant asserts

---

[12] Contrary to the dissent, the Court is not finding that 60 hours per week is the appropriate measure. Rather, the Court is remanding the matter for the WCJ to properly recalculate Claimant's AWW, including considering Claimant's "probable overtime" the WCJ found based upon Employer's credited testimony. (FOF ¶ 14.)

[13] Although Claimant now asserts before this Court that the WCJ erred in calculating his hourly rate because she did not include the job premium rate and job premium overtime rate Claimant was paid, Claimant did not raise the issue of his hourly wage rate in his appeal documents before the Board, and thus it was not preserved for our review. *McGaffin v. Workers' Comp. Appeal Bd. (Manatron, Inc.)*, 903 A.2d 94, 101-02 (Pa. Cmwlth. 2006). We therefore do not address it.

[14] In light of our resolution of the AWW issue, we must vacate the denial of Claimant's request for an award of penalties based on the miscalculation of his AWW, and remand for the WCJ to reconsider that issue once she recalculates Claimant's AWW. Section 435(d) of the WC Act, added by Section 3 of the Act of February 8, 1972, P.L. 25, *as amended*, 77 P.S. § 991(d); *Galizia v. Workers' Comp. Appeal Bd. (Woodloch Pines, Inc.)*, 933 A.2d 146, 154 (Pa. Cmwlth. 2007) (noting that whether penalties should be imposed is discretionary, and a determination that the employer has violated the WC Act does not require an award of penalties).

that the text of Section 306(a.1) does not allow for the suspension of benefits where, as here, the time Claimant spent incarcerated occurred prior to his conviction, he received a credit of time served upon his conviction for that period of pretrial incarceration and then was released. The Board's interpretation of Section 306(a.1) to include the suspension of benefits under these circumstances "engraft[s] language onto the statute" that the General Assembly did not see fit to include. (Claimant's Br. at 29 (quoting *Rogele, Inc. v. Workers' Comp. Appeal Bd. (Mattson)*, 969 A.2d 634, 638 (Pa. Cmwlth. 2009)).) Moreover, Claimant argues, such an interpretation raises "a serious question" of unequal treatment under the law based on the inability to meet bail. (*Id.* at 31.) Claimant contends that it is uncertain whether, had he been able to make bail, he would have received the same sentence. Therefore, Claimant concludes, the Board should not have affirmed the WCJ's Decision suspending his benefits.

Employer argues that Claimant's benefits were properly suspended. Employer asserts that once Claimant was sentenced to 525 days of incarceration upon his guilty plea, that time, credited as time served, "converted to incarceration for conviction for his crime." (Employer's Br. at 25, 28 (emphasis omitted).) To interpret Section 306(a.1) as Claimant suggests would be contrary to "the spirit and intent[]" of the WC Act, Employer argues, because it would operate as a windfall to Claimant since he would receive compensation for a loss of earning power that was not the result of his work-related injury. (*Id.* at 25 (citing *Banic v. Workmen's Comp. Appeal Bd. (Trans-Bridge Lines, Inc.)*, 705 A.2d 432, 437 (Pa. 1997)).) While, Employer notes, Claimant cites to *Rogele* for support, Employer argues that *Rogele* is distinguishable because, in *Rogele*, unlike here, the employer did not unilaterally suspend the claimant's benefits, and the claimant did not receive a

13

sentence of time served. Employer asserts that Claimant's equal protection argument is unpreserved for appellate review. Therefore, Employer concludes, the suspension of Claimant's benefits was proper.

We begin with a review of the settled principles of statutory interpretation. As with all statutory interpretation, "[t]he object . . . is to ascertain and effectuate the intention of the General Assembly." Section 1921(a) of the Statutory Construction Act of 1972, 1 Pa. C.S. § 1921(a). "Generally, the best indication of the General Assembly's intent is the plain language of the statute." *Allstate Life Ins. Co. v. Commonwealth*, 52 A.3d 1077, 1080 (Pa. 2012). Words of a statute are to be given their plain and ordinary meaning unless they are technical words or have acquired a "peculiar and appropriate meaning," in which case those words must be construed according to their "peculiar and appropriate meaning." Section 1903(a) of the Statutory Construction Act of 1972, 1 Pa. C.S. § 1903(a). We must be mindful that, "[w]hen the words of a statute are clear and free from all ambiguity," this Court may not disregard the letter of the law "under the pretext of pursuing its spirit." 1 Pa. C.S. § 1921(b). Moreover, the Court should be vigilant not to, under the guise of interpretation, supply words the General Assembly omitted. *Rogele*, 969 A.2d at 637; *Pa. Soc. Servs. Union, Local 668 v. Pa. Labor Relations Bd.*, 367 A.2d 778, 781 (Pa. Cmwlth. 1976), *aff'd*, 392 A.2d 256 (Pa. 1978). With respect to the WC Act in particular, this Court must construe it liberally in order to effectuate its humanitarian purposes and, thus, "borderline interpretations [should be] resolved in favor of the injured employee." *Maple Creek Mining Co. v. Workers' Comp. Appeal Bd. (Bakos)*, 833 A.2d 1198, 1200 (Pa. Cmwlth. 2003) (citation omitted). In interpreting a virtually identical provision in Section 402.6(a) of the Unemployment Compensation (UC) Law, the

14

Pennsylvania Supreme Court recently held that claimants serving their sentences on weekends were not disqualified from UC benefits and reiterated the need for liberal construction. *Harmon v. Unemployment Comp. Bd. of Review*, __ A.3d __, __ (Pa., No. 37 EAP 2017, filed April 26, 2019), slip op at 23-24.[15] The Supreme Court stated that its "reading [wa]s consistent with the remedial purposes of the [UC] Law and [the Supreme Court's] prior pronouncement that disqualification provisions 'should be narrowly construed and a claimant must not be denied compensation unless he is unequivocally excluded by the plain language of these provisions.'" *Harmon*, __ A.3d at __, slip op. at 23-24 (quoting *Penflex, Inc. v. Bryson*, 485 A.2d 359, 365 (Pa. 1984)).

The plain language of Section 306(a.1) states, in pertinent part, that payment of WC benefits is not required "for any period during which the employe **is** incarcerated **after** a conviction . . . ."[16] 77 P.S. § 511.1 (emphasis added). The ordinary meaning of "after" in this context is "behind in place or time" or "later than a particular time or period of time." Webster's Third New International

---

[15] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, added by Section 2 of the Act of October 30, 1996, P.L. 738, 43 P.S. § 802.6(a). Section 402.6(a) provides that "[a]n employe shall not be eligible for payment of unemployment compensation benefits **for any weeks of unemployment during which the employe is incarcerated after a conviction**." *Id.* (emphasis added). While *Harmon* is factually distinguishable because there the periods of incarceration undoubtedly occurred after conviction, the Supreme Court's analysis is nonetheless instructive.

[16] The dissent believes our emphasizing the word "after" causes us to "ignore the first half of Section 306(a.1)," which references "any period during which the employe is incarcerated." *Sadler v. Workers' Comp. Appeal Bd. (Phila. Coca-Cola)*, __ A.3d __, __ (Pa. Cmwlth., No. 328 C.D. 2018, filed May 22, 2019), slip op. at 7 (J. Covey, dissenting). However, it is possible to give effect to all of the statute's words as we do, without reading out the language "after a conviction." Furthermore, although the WC Act is plainly phrased in the **present** tense ("is incarcerated"), the dissent reads Section 306(a.1) in the **past** tense. *See, e.g.*, *id.*, slip op at 5 ("Claimant **was** incarcerated. . . ."); 10 ("Claimant **was** imprisoned"); 10-11 ("Notwithstanding that the time **had already been served**. . . .") (emphasis added).

15

Dictionary 38 (2002). Incarceration may occur before or after a conviction. Often referred to as pretrial detention, incarceration can occur before a conviction when the accused is unable to meet bail while awaiting trial, as occurred here.[17] Incarceration may also occur after or following a criminal conviction when the accused is sentenced to a period of incarceration.

Here, Claimant was incarcerated **before** his conviction because he was unable to make $150,000 bail. Consistent with the plain unambiguous language of Section 306(a.1), Claimant's benefits could not be suspended during this period. Employer, however, would have us essentially deem Claimant's pretrial incarceration as having occurred after his conviction because he received credit against his post-conviction sentence for the time he spent incarcerated before his conviction. To do so, however, would require us to supply a word the General Assembly chose to omit, contrary to settled principles of statutory construction. Indeed, when the General Assembly enacted Section 306(a.1) in 1996,[18] it knew that pursuant to Section 9760(1) of the Sentencing Code, 42 Pa. C.S. § 9760(1),[19]

---

[17] "The fundamental purpose of bail is to secure the" attendance of the accused at trial. *Commonwealth v. Truesdale*, 296 A.2d 829, 834 (Pa. 1972). When met, bail also serves the purpose of promoting the presumption of innocence, avoiding criminal sanctions prior to trial and conviction, and providing the accused the maximum opportunity to prepare a defense. *Id.* at 834-35.

[18] The "incarceration after a conviction" amendment was previously contained in Section 306(a)(2) of the Act, which was enacted in 1993. Act of July 2, 1993, P.L. 190, No. 44.

[19] Section 9760(1) of the Sentencing Code provides:

> Credit against the maximum term and any minimum term shall be given to the defendant for all time spent in custody as a result of the criminal charge for which a prison sentence is imposed or as a result of the conduct on which such a charge is based. Credit shall include credit for time spent in custody prior to trial, during trial, pending sentence, and pending the resolution of an appeal.

**(Footnote continued on next page…)**

an individual incarcerated prior to conviction was entitled to a post-conviction credit for time served. *See Zager v. Chester Cmty. Charter Sch.*, 934 A.2d 1227, 1232 (Pa. 2007) (noting that the General Assembly is presumed to know existing law when it passes legislation). Yet, the General Assembly included no corresponding provision in Section 306(a.1) that allows for time spent incarcerated **before** a conviction to be deemed as occurring after a conviction, although the General Assembly could have easily included such a provision. *See, e.g.*, 28 R.I. Gen. Laws § 28-33-17.1(c) (providing that, under Rhode Island law, an injured worker is not entitled to WC benefits "for any period during which the employee was imprisoned **as a result** of a conviction of a criminal offense," which "includes credit for time-served, such that the time served becomes a period served as the result of a conviction") (emphasis added); *see also Matter of Barron v. Ellis Hosp.*, 663 N.Y.S.2d 698, 699 (N.Y. App. Div. 1997) (declining to permit the employer from discontinuing benefits for the period that the claimant's pretrial incarceration was credited against his sentence because the statute permitting a credit for any presentence time served prior to conviction "**does not transform the date of incarceration into the date of conviction**") (emphasis added).

Our decision in *Rogele* supports applying a plain language interpretation to Section 306(a.1). In *Rogele*, this Court wrote:

> Section 306(a.1) expressly authorizes the termination of payments **only** during periods of incarceration **after** conviction. This section makes no reference to a termination of benefits during periods of incarceration **prior** to conviction . . . .

---

(continued…)

42 Pa. C.S. § 9760(1). The text of Section 9760(1) was first enacted in 1974. Act of December 30, 1974, P.L. 1052, No. 345.

17

. . .

**First and foremost, this Court is not authorized to engraft language onto a statute. And this Court will not impute an intent where the statutory language is unambiguous.**

Clearly, the legislature intended the discontinuance of benefits for an incarcerated recipient **after** conviction. Absent explicit statutory provision, this Court is not free to reduce statutorily-created benefits. If the legislature had intended that benefits be discontinued for an incarcerated recipient **prior** to conviction, it would have written the statute to achieve that result.

969 A.2d at 637-38 (emphasis in second paragraph added). It is true, as Employer argues, that the facts of *Rogele* are different than this case. However, *Rogele*'s requirement that we interpret the unambiguous statutory language in Section 306(a.1) as written, without engrafting language into the text that would impute an intent not supported by the existing language, is clearly applicable.

Further, Employer's interpretation of Section 306(a.1) would not be consistent with its purpose. In *Henkels & McCoy, Inc. v. Workers' Compensation Appeal Board (Hendrie)*, our Supreme Court explained that the intent of the General Assembly in enacting Section 306(a.1) was "to preclude the payment of workers' compensation benefits to persons who are convicted of violations of the Pennsylvania Crimes Code and who, as a result of those convictions, are **thereafter** removed from the work force."[20] 776 A.2d 951, 955 (Pa. 2001) (emphasis added). This premise follows from the underlying principles of the WC Act because, once incarcerated **after** a conviction, the employee's disability, or loss of earning power, is no longer causally related to his work injury; instead, the employee's loss of earning power is the result of the incarceration. *Banic*, 705

---

[20] The issue in *Hendrie* was whether involuntary commitment to a state psychiatric hospital constituted **incarceration**, which is not the issue that confronts this Court.

18

A.2d at 435-37. Thus, the "incarceration after a conviction" amendment is "nothing more than a clarification" of existing law, which, under the WC Act, mandates that benefits be suspended during incarceration since it is the claimant's "own conduct, rather than his work-related injury, which caused his loss of earning power." *Id.* at 437. Because a claimant has only been accused of a crime prior to the conviction, the WC Act does not consider that period of incarceration as the claimant's fault or a voluntary withdrawal from the workforce. *See Rogele, Inc.*, 969 A.2d at 638 (discussing the involuntary nature of pretrial incarceration where an accused is unable to make bail).

Here, Claimant was **not** incarcerated, or removed from the workforce, **after** his conviction. There is no argument that Claimant at all times has a work-related injury that prevents him from earning wages. Prior to his conviction, Claimant was incarcerated because of his inability to make bail, not because of a conviction for criminal conduct. To suspend Claimant's benefits during a period that he is not incarcerated after a conviction, and during which his loss of earning power is caused by his work injury, essentially punishes him because he was unable to meet bail.[21] This is not consistent with the humanitarian purpose of the Act and is not consistent with the plain language of Section 306(a.1). *See Merva v. Workers' Comp. Appeal Bd. (St. John the Baptist R.C. Church)*, 784 A.2d 222, 228 (Pa. Cmwlth. 2001) (noting that "the purpose of the [WC] Act is to compensate injured workers for their loss of earning power"). Employer's interpretation would add

---

[21] As Claimant notes, it is uncertain whether, had he made bail, that the sentencing judge would have imposed the same sentence. *See* Ryan W. Scott, *Inter-Judge Sentencing Disparity After Booker: A First Look*, 63 Stan. L. Rev. 1, 57 n.253 (2010) (federal judges whom the author interviewed stated that while there was no legal restraint on them, they could not "imagine circumstances in which a judge would impose a sentence of less than time served").

19

words to Section 306(a.1) the General Assembly chose not to include by reading Section 306(a.1) as suspending benefits "for any period during which the employe is incarcerated after a conviction, **which includes credit for time served**." As we cautioned in *Rogele*, we are not permitted, under the guise of interpretation, to add words to a statute that the General Assembly omitted. It is up to the General Assembly, and not this Court, to decide whether benefits should be suspended where a period of incarceration prior to conviction is credited as time served, for "[w]e must take the law as we find it." *Guttman Oil Co. v. Workmen's Comp. Appeal Bd.*, 426 A.2d 760, 762 (Pa. Cmwlth. 1981) (citation omitted) (holding that this Court was bound to apply the law as written even though it resulted in the claimant having a higher AWW than what he was actually receiving).[22]

In conclusion, the plain language of Section 306(a.1) does not support deeming incarceration that occurs **before** a conviction as having occurred **after** a conviction in order to suspend WC benefits of a claimant who could not meet bail. The plain language of Section 306(a.1) is consistent with the fundamental principles underlying the WC Act and its purpose. Because the WC Act is a remedial act and statutory provisions that disqualify claimants from benefits "should be narrowly construed" unless the claimants are "unequivocally excluded by the plain language of" the statute, *Harmon*, __ A.3d at __, slip op. at 24 (citation omitted), the Board's Order must be reversed to the extent it suspended Claimant's benefits. Claimant did not spend any period of time "incarcerated **after**

---

[22] In light of our resolution, we need not address Claimant's argument that Employer's interpretation results in an unequal application of the law. *Dauphin Cty. Soc. Servs. for Children & Youth v. Dep't of Pub. Welfare*, 855 A.2d 159, 165 (Pa. Cmwlth. 2004) (noting that courts should make a decision "on non-constitutional grounds if possible and avoid the constitutional question").

a conviction" as required by the WC Act. To hold otherwise requires this Court to add words to the statute that the General Assembly chose not to include.

## III. Conclusion

For the foregoing reasons, we conclude that the Board erred when it affirmed the WCJ's Decision denying the Review Petition to the extent Claimant alleged his AWW was miscalculated. We also conclude that the Board erred to the extent it affirmed the WCJ's Decision granting the Suspension Petition because Claimant was not "incarcerated after a conviction."

Accordingly, we remand the matter to the Board with direction that it be further remanded to the WCJ for a recalculation of Claimant's AWW, taking into account that Claimant was expected to work overtime during the summer, and, thereafter, a determination of whether Claimant is entitled to an award of penalties.

**RENÉE COHN JUBELIRER,** Judge

21

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Carl Sadler,                                          :
                              Petitioner              :
                                                     :
              v.                                      :          No. 328 C.D. 2018
                                                     :
Workers' Compensation Appeal                         :
Board (Philadelphia Coca-Cola),                      :
                              Respondent              :

# **O R D E R**

**NOW**, May 22, 2019, the Order of the Workers' Compensation Appeal Board (Board), entered in the above-captioned matter, is hereby **REVERSED** to the extent it affirmed the Decision of the Workers' Compensation Judge (WCJ) which granted the Suspension Petition of Philadelphia Coca-Cola and **VACATED** to the extent it denied the Review Petition of Carl Sadler (Claimant) alleging his average weekly wage (AWW) was miscalculated and seeking an award of penalties. We **REMAND** the matter to the Board with the direction that it be further remanded to the WCJ for a recalculation of Claimant's AWW, taking into account that Claimant was expected to work overtime during the summer, and, thereafter, a determination of whether Claimant is entitled to an award of penalties. The Board's Order, to the extent it affirmed the WCJ's Decision granting the Review Petition in part because the parties stipulated that the description of Claimant's injury was incorrect, is **AFFIRMED**.

Jurisdiction relinquished.

_____
**RENÉE COHN JUBELIRER,** Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Carl Sadler,                              :
                          Petitioner      :
                                          :
              v.                          :
                                          :
Workers' Compensation Appeal              :
Board (Philadelphia Coca-Cola),           :    No. 328 C.D. 2018
                          Respondent      :    Argued: November 15, 2018


BEFORE:   HONORABLE RENÉE COHN JUBELIRER, Judge
          HONORABLE ANNE E. COVEY, Judge (P.)
          HONORABLE CHRISTINE FIZZANO CANNON, Judge


DISSENTING OPINION BY
JUDGE COVEY                              FILED: May 22, 2019


          Because I believe the Workers' Compensation (WC) Judge (WCJ)
properly denied Carl Sadler's (Claimant) Review Petition alleging an incorrect
average weekly wage (AWW) calculation and properly granted Philadelphia Coca-
Cola's (Employer) Petition to Suspend WC Benefits (Suspension Petition), I would
affirm the Workers' Compensation Appeal Board's (Board) order, and therefore
respectfully dissent from the Majority.


## AWW

          Section 309(d.2) of the WC Act (Act)[1] provides:

> If the employe has worked less than a complete period of
> thirteen calendar weeks and does not have fixed weekly
> wages, the [AWW] shall be the hourly wage rate multiplied
> by the number of hours the employe was expected to work
> per week under the terms of employment.

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 582(d.2).

77 P.S. § 582(d.2). Here, it is undisputed that Claimant worked for Employer for less than 13 weeks, *i.e.*, he worked 3 full weeks and a day, and did not have a fixed weekly rate, *i.e.*, he was paid an hourly rate of $24.45. Claimant asserts that he was *expected* to work 60 hours a week.

With respect to Claimant's expected work hours, Employer's Plant Manager Dennis Veneri (Veneri) testified:

> Q. So [] Veneri, can you just clarify again what the normal working hours are?
>
> A. **The normal working hours are four ten-hour shifts**, but then when we have a busy season we work an extra day or two days or whatever we have to do to get the proper help.
>
> Q. When you have to run an extra day or an extra two days, that's another ten-hour shift?
>
> A. Yes, ma'am.
>
> Q. How many hours was [Claimant] expected to work per week under the terms of his employment?
>
> A. When he was hired, **it was a four ten-hour shift**, but it was explained to [Claimant] that there could and probably would be overtime because it was the busy time of the year when he was hired.
>
> Q. Would that overtime be guaranteed overtime?
>
> A. In the busy season, more than likely yes, because it was busy.
>
> Q. Would [Claimant] be required to work extra hours during the busy season?
>
> A. Yes. As well as everyone else that works there, yes.
>
> Q. How is it determined when the busy season is, how many weeks does that last?
>
> A. It's typically the hundred days of summer when the schedule gets, you know, very busy.

Q. And then after those hundred days of summer?

A. It kind of slows down.

Q. To your knowledge, what was [Claimant's] hourly rate at the time of his injury on July second, 2012?

A. I believe it was twenty-four forty-five.

Q. In July of 2012, did [Employer] pay a different amount of pay for overtime hours over forty?

A. Yes. Typically it would be time and a half for over forty.

Q. Would [Claimant] have been entitled to that overtime paid for hours that he worked over forty hours?

A. Yes. Yes, he would.

Certified Record (C.R.) Item 20 (Notes of Testimony (N.T.) October 22, 2015) at 6-7 (emphasis added). The WCJ found Veneri's testimony credible.[2] *See* WCJ Dec. at Finding of Fact (FOF) 13. Contrarily, the WCJ found Claimant's testimony not credible "as to the terms of his employment on hours." WCJ Dec. at FOF 12. Neither the Board nor the Court may reweigh the evidence or the WCJ's credibility determinations. *Sell v. Workers' Comp. Appeal Bd. (LNP Eng'g)*, 771 A.2d 1246 (Pa. 2001). Based on the above-quoted testimony, the WCJ found as a fact: "Claimant was hired to work a forty-hour week with probable overtime during the busy season or 100 days of summer." WCJ Dec. at FOF 14. Accordingly, this finding of fact is clearly based on substantial evidence.[3]

---

[2] Contrarily, the WCJ found Claimant's testimony not credible "as to the terms of his employment on hours." WCJ Dec. at Finding of Fact 12. "The WCJ is the ultimate factfinder and has exclusive province over questions of credibility and evidentiary weight." *Univ. of Pa. v. Workers' Comp. Appeal Bd. (Hicks)*, 16 A.3d 1225, 1229 n.8 (Pa. Cmwlth. 2011). "The WCJ, therefore, is free to accept or reject, in whole or in part, the testimony of any witness[.]" *Griffiths v. Workers' Comp. Appeal Bd. (Red Lobster)*, 760 A.2d 72, 76 (Pa. Cmwlth. 2000).

[3] "'Substantial evidence is such relevant evidence a reasonable person might find sufficient to support the WCJ's findings.' *Rosenberg v. Workers' [Comp.] Appeal [Bd.] (Pike C[ty.])*, 942

The Majority believes, contrary to Section 309(d.2) of the Act, the AWW calculation should be based on Claimant's actual hours worked. Notwithstanding that Claimant worked less than 13 weeks, the Majority wants to remand the case to the WCJ to recalculate the AWW considering Claimant's "award of overtime."[4] Majority Op. at 10.

However, Section 309(d.2) of the Act "provides for a **prospective calculation** of **potential earnings**. By its terms, [it] contemplates persons for whom there is little work history with the employer upon which to calculate the AWW." *Reifsnyder v. Workers' Comp. Appeal Bd. (Dana Corp.)*, 883 A.2d 537, 546-47 (Pa. 2005) (emphasis added). As the Pennsylvania Supreme Court explained, the

---

A.2d 245, 249 n. 4 (Pa. Cmwlth. 2008)." *Frog, Switch & Mfg. Co. v. Workers' Comp. Appeal Bd. (Johnson)*, 106 A.3d 202, 206 (Pa. Cmwlth. 2014).

[4] The Majority cites to *Lahr Mechanical v. Workers' Compensation Appeal Board (Floyd)*, 933 A.2d 1095 (Pa. Cmwlth. 2007), to support its position. However, the *Lahr* Court expressly stated:

> The question of a claimant's expected number of hours per week is a question of fact for the WCJ, [*Envtl.*] *Options* [*Grp. v. Workers' Comp. Appeal Bd. (Brown)*, 787 A.2d 460 (Pa. Cmwlth. 2001)], and the WCJ's authority over questions of credibility, conflicting evidence and evidentiary weight is unquestioned. *Minicozzi v. Workers' Comp. Appeal Bd. (Indust. Metal Plating, Inc.)*, 873 A.2d 25 (Pa. Cmwlth. 2005).
>
> Moreover, 'it is irrelevant whether the record contains evidence to support findings other than those made by the WCJ; the critical inquiry is whether there is evidence to support the findings actually made.' *Id.* at 29 (quoting *Del*[.] [*Cty.*] *v. Workers' Comp. Appeal Bd. (Baxter Coles)*, 808 A.2d 965, 969 (Pa. Cmwlth. 2002)). We review the entire record to determine if it contains evidence a reasonable mind might find sufficient to support the WCJ's findings. *Minicozzi*. If the record contains such evidence, the findings must be upheld even though the record contains conflicting evidence. *Id.*

*Lahr*, 933 A.2d at 1101. The *Lahr* Court determined that substantial evidence supported the WCJ's AWW determination. Similarly here, substantial evidence supports the WCJ's determination.

amendment to Section 309 of the Act[5] (relating to AWW determination) is "an attempt to ensure that the calculation of wages would be a more accurate and realistic measure of what the employee could have expected to earn had he not been injured which, in turn, would ensure both that the employee was not over-compensated and the employer not over-burdened." *Hannaberry HVAC v. Workers' Comp. Appeal Bd. (Snyder, Jr.)*, 834 A.2d 524, 528 (Pa. 2003).

In the instant case, had Claimant not been injured, his expected work hours would be 40 hours per week with probable overtime during the 100 day busy season. Thus, 60 hours per week would not be an "accurate and realistic measure of what [Claimant] could have expected to earn had he not been injured[.]" *Hannaberry HVAC*, 834 A.2d at 528. In fact, Claimant only worked 60 hours during one of the three weeks he worked before his injury. *See* C.R. at 181-182 ("PAYROLL PERIOD: 06/12/2012-06/17/2012" "TOT WKD HRS" "**39.50**"); ("PAYROLL PERIOD: 06/25/2012-07/01/2012" "TOT WKD HRS" "**50.02**") (emphasis added); C.R. at 199 (PAYROLL PERIOD: 06/18/2012-06/24/2012" "TOT WKD HRS" **62.52**) (emphasis added).[6] Accordingly, the WCJ properly denied Claimant's Review Petition for an incorrect AWW.

**Suspension Petition**

Section 306(a.1) of the Act[7] states: "**Nothing in this [A]ct shall require payment of compensation** under clause (a) [(relating to total disability)] or (b)

---

[5] "These amendments in [the Act of June 24, 1996, P.L. 350 (] Act 57[)] 'rewrote subsec[tions] (d) and (e), inserted subsec[tions] (d.1) and (d.2)' and, thereby, eliminated a former statutory option that permitted the employee to elect the highest income thirteen-week period as the basis for the AWW calculations. 77 P.S. § 582, Annotation, Historical and Statutory Notes[.]" *Pike v. Workers' Comp. Appeal Bd. (Veseley Bros. Moving)*, 22 A.3d 332, 339 (Pa. Cmwlth. 2011).

[6] *See also* C.R. at 183 ("PAYROLL PERIOD: 07/02/2012-07/08/2012" "TOT WKD HRS" "10").

[7] Added by Section 4 of the Act of June 24, 1996, P.L. 350.

[(relating to partial disability)] **for any period** during which the **employe is incarcerated after a conviction** . . . ." 77 P.S. § 511.1 (emphasis added). Here, Claimant was incarcerated while awaiting trial because he could not afford bail. The day he was convicted, Claimant was sentenced to 525 days of incarceration, which is approximately 1 year, 5 months and 10 days, with credit for time-served and, thus, was released. The Majority concludes that because Claimant was incarcerated before his conviction, Claimant's WC benefits should not be suspended.

"Our inquiry is guided by the principles set forth in the Statutory Construction Act [of 1972 (Statutory Construction Act)], including the primary maxim that the object of statutory construction is to ascertain and effectuate legislative intent. 1 Pa.C.S. § 1921(a)." *Slippery Rock Area Sch. Dist. v. Pa. Cyber Charter Sch.*, 31 A.3d 657, 663 (Pa. 2011). "[I]n ascertaining legislative intent, the Statutory Construction Act 'requires a presumption that the General Assembly did not intend a result that is absurd or unreasonable.' 1 Pa.C.S. § 1922(1)[.]" *Id.* Further, "courts should interpret statutes so as to avoid constitutional questions when possible[.]" *Robinson Twp. v. Commonwealth*, 147 A.3d 536, 574 (Pa. 2016).

Moreover, "[the] Court does not dissect statutory text and interpret it in a vacuum." *Commonwealth v. Kingston*, 143 A.3d 917, 924 (Pa. 2016). "In giving effect to the words of the legislature, we should not interpret statutory words in isolation, but must read them with reference to the context in which they appear." *Roethlein v. Portnoff Law Assocs., Ltd.*, 81 A.3d 816, 822 (Pa. 2013); *see also Iacuri v. Cty. of Allegheny*, 115 A.3d 913 (Pa. Cmwlth. 2015).

> The polestar of statutory construction is to determine the intent of the General Assembly. 1 Pa.C.S. § 1921(a); *see also Hannaberry HVAC v. Workers' Comp. Appeal Bd. (Snyder)*, . . . 834 A.2d 524, 531 ([Pa.] 2003). It is settled that, '[w]hen the words of a statute are clear and free from all ambiguity, they are presumed to be the best indication of legislative intent.' *Hannaberry*, 834 A.2d at 531.

However, if 'the words of the statute are not explicit' on the point at issue:

> the intention of the General Assembly may be ascertained by considering, among other matters:
>
> (1) **The occasion and necessity for the statute**.
>
> (2) The circumstances under which it was enacted.
>
> (3) **The mischief to be remedied**.
>
> (4) **The object to be attained**.
>
> (5) The former law, if any, including other statutes upon the same or similar subjects.
>
> (6) **The consequences of a particular interpretation**.
>
> (7) The contemporaneous legislative history.
>
> (8) Legislative and administrative interpretations of such statute.
>
> 1 Pa.C.S. § 1921(c).

*Griffiths v. Workers' Comp. Appeal Bd. (Seven Stars Farm, Inc.)*, 943 A.2d 242, 255 (Pa. 2008) (emphasis added).

Here, the Majority maintains that the legislature used the term "after conviction" to preclude the suspension of WC benefits of claimants incarcerated before their convictions because they cannot afford bail. The Majority extends this reading to include a claimant who *is* convicted, but whose sentence is credited for time-served. The Dissent respectfully disagrees that the focus of Section 306(a.1) of the Act is limited to "after conviction" as the Majority has done herein. Such a narrow reading of that section fails to give effect to all of the words in that provision. The General Assembly specifically stated that nothing in the Act shall require the payment of WC for "**any period during which** the employe is incarcerated after a conviction . . . ." 77 P.S. § 511.1 (emphasis added). The Majority's interpretation

ignores the first half of Section 306(a.1) of the Act,[8] and by focusing on the word "after," the Majority distorts the meaning of the statute.  The law is well-established that "[w]hen interpreting a statute, courts must presume that the legislature did not intend any statutory language to exist as mere surplusage; consequently, courts must construe a statute so as to give effect to every word." *Commonwealth v. Golden Gate Nat'l Senior Care LLC*, 194 A.3d 1010, 1034 (Pa. 2018).

The Dissent's interpretation is in accord with Pennsylvania Supreme Court and Commonwealth Court precedent, and supports the General Assembly's purpose for enacting the Act - the remedy of "[WC] payments is part of the quid pro quo in which the sacrifices and gains of employers and  employees are balanced.  An injured employee is provided 'expeditious and certain payments' without having to prove fault.  In return, the worker gives up the right to sue the employer." *Nagle v. TrueBlu, Inc.*, 148 A.3d 946, 961 (Pa. Cmwlth. 2016) (citations omitted) (quoting *Candido v. Polymers, Inc.*, 687 A.2d 476, 478–79 (Vt. 1996)).  In upholding that balance, the General Assembly expressly provided in Section 306(a.1) of the Act that employers are not required to pay compensation for any period that an injured employee has been convicted and is incarcerated therefor.  To permit a claimant convicted of violating the Pennsylvania Crimes Code to receive WC benefits for any period of incarceration after a conviction, frustrates this entrenched public policy.

In the context of a claimant incarcerated **but on work release**, this Court explained:

> Prior to the enactment of [the Act of July 2, 1993, P.L. 190, known as] Act 44 in 1993, there was no express rule prohibiting an incarcerated claimant from collecting

---

[8] The Majority maintains that it gives effect to all of the words, notwithstanding its focus on the word "after."  Majority op, at 15 n.16.  However, its analysis demonstrates otherwise.  Further, the Dissent's use of the past tense to describe Claimant's incarceration is of no moment.  Whether or not Claimant received credit for his time served, the 525-day sentence is his period of incarceration after conviction which expired prior to the writing of this opinion.

workers' compensation benefits. However, by passing Act 44 and creating Section 306(a)(2) of the Act,[9] **our General Assembly unambiguously demonstrated its intent to disqualify a claimant from receiving [WC] benefits for any period of time during which the claimant is incarcerated after a conviction**. The Legislature did not create an exception in Section 306(a)(2) of the Act for prisoners on work release, and we cannot add an exception to a statute that the Legislature did not see fit to include.

Moreover, while this case raises an issue of first impression in [WC] law, we have decided similar issues in the context of unemployment compensation law. In *Kroh v. Unemployment Compensation Board of Review*, 711 A.2d 1093 (Pa. Cmwlth. 1998), we considered whether it was constitutional to disqualify an incarcerated claimant, who was eligible for work release, from receiving unemployment benefits under Section 402.6 of the Unemployment Compensation Law (Law),[10] which provides that '[n]othing in this act shall require payment of unemployment compensation benefits for any weeks of unemployment during which the employe is incarcerated after a conviction.' We explained that **the General Assembly had a rational basis to disqualify incarcerated claimants from receiving unemployment benefits**, even if they were on work release:

> The General Assembly had a legitimate reason not to want prisoners who were incarcerated and living at the taxpayers' expense to receive unemployment compensation just because they were eligible for work release. Moreover, it could have felt that while on work release, because of restrictions necessarily imposed under those programs, prisoners were not sufficiently available for work so as to permit them to have a full range of employment options that other claimants have in pursuing new employment. **Finally, in denying a prisoner unemployment, the General Assembly could have sought to advance the valid legislative goal of deterrence of criminal activity**. . . . *Kroh*, 711 A.2d at 1096. Section 402.6 of the Law is

---

[9] Former Section 302(a)(2) of the Act is identical to current Section 306(a.1) of the Act.

[10] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, added by the Act of October 30, 1996, P.L. 738, 43 P.S. § 802.6.

> very similar to Section 306(a)(2) of the Act, and thus the analysis in *Kroh* is highly relevant and persuasive here.
>
> Accordingly, for all the above reasons, [the Court] conclude[d] that a claimant who is incarcerated, **even though eligible for work release**, is nevertheless disqualified under Section 306(a)(2) of the Act from receiving [WC] benefits.

*Brinker's Intern, Inc. v. Workers' Comp. Appeal Bd. (Weissenstein)*, 721 A.2d 406, 409 (Pa. Cmwlth. 1998) (emphasis added; citations omitted). The *Weissenstein* Court stated as a reason for rejecting claimant's arguments that "**when a claimant is incarcerated, his or her loss of earning power is caused by the imprisonment, not by the work-related injury, and thus benefits may be suspended**." *Id.* at 410 (emphasis added).

The same analysis applies in the instant case. The 525 days that Claimant was imprisoned when he could not post bail, clearly did not come within the statutory ineligibility for WC payment suspension because it was **before** his **conviction**. Nor did Employer herein seek such relief. However, **after Claimant's conviction**, those 525 days came squarely within the statutory language of "**any period during which** the employe is incarcerated after a conviction . . . [,]" 77 P.S. § 511.1 (emphasis added), and therefore, in accordance with the General Assembly's intent that no WC payment is required to be made for any period of incarceration. Accordingly, Employer was entitled to have Claimant's WC payments suspended therefor. To rule to the contrary, which is the Majority's position, is in complete derogation of the statute's plain words. Even if the Majority believes the words are ambiguous, the Dissent's interpretation of all of the section's words is also in accord with the General Assembly's intent, and the Statutory Construction Act's directive to consider: "[t]he occasion and necessity for the statute[;] [] [t]he circumstances under which it was enacted[;] [] [t]he mischief to be remedied[;] [] [t]he object to be

attained[;] . . . [and] [t]he consequences of [this] particular interpretation[;]" as well as case law that has held the General Assembly did not intend to require an employer to pay WC benefits where a claimant has been incarcerated because he violated the Pennsylvania Crimes Code. *Griffiths*, 943 A.2d at 255.

Specifically, **Claimant was sentenced** to 525 days (nearly 1 and 1/2 years) of incarceration **after his conviction**. Notwithstanding that the time had already been served, suspending his WC benefits for that time period fulfills the following mandated legislative interpretation and purposes: (1) "a result that is [not] absurd, impossible of execution, or unreasonable," *Griffiths*, 943 A.2d at 255; (2) "disqualify[ing] a claimant from receiving [WC] benefits for [a] period of time during which the claimant [was] incarcerated [as a result of] a conviction," *Weissenstein*, 721 A.2d 406, 409; (3) "advanc[ing] the valid legislative goal of deterrence of criminal activity," *id.* (quoting *Kroh*, 711 A.2d at 1096); and (4) "when a claimant is incarcerated, his or her loss of earning power is caused by the imprisonment, not by the work-related injury[,]" and thus he is not entitled to WC benefits. *Id.* at 410. The Majority's interpretation is contrary to the General Assembly's intent and public policy.

The Majority states that it relies upon *Harmon v. Unemployment Compensation Board of Review*, ___ A.3d ___ (Pa., No. 37 EAP 2017, filed April 26, 2019), because it believes the Pennsylvania Supreme Court interpreted a "virtually identical provision in Section 402.6(a) of the [Law]" as that contained in the WC Act. Dissenting Op. at 14. However, Section 402.6(a) of the Law reads: "[a]n employe shall not be eligible for payment of unemployment compensation benefits for any weeks of unemployment **during which** the employe is incarcerated after a conviction." 43 P.S. § 802.6 (emphasis added). The issue before the *Harmon* Court was whether Section 402.6 of the Law contains a durational requirement such that only claimants who are incarcerated for the entire claim week in question are

AEC - 11

disqualified. Thus, the words at issue were "during which" not "after conviction." The Court ruled, "the legislative history of the statute does not suggest the General Assembly intended to disqualify those serving sentences of weekend confinement from receiving [UC] benefits." *Harmon*, ___ A.3d at ___, slip op. at 23. The Court concluded that its interpretation was consistent with the purpose of the Law, i.e., "to prevent economic insecurity among "persons unemployed through **no fault of their own**."[11] 43 P.S. § 752 (emphasis added)." *Harmon*, ___ A.3d at ___, slip op. at 23.

Correspondingly, the Pennsylvania Supreme Court has long since held in the WC context

> because '[b]enefits under the Act will only be permitted where the disability, work related injury or disease results in a loss of earning power,' it is clear that [WC] benefits can be suspended under the Act when a claimant is incarcerated **since his work-related injury is not the cause of the loss of earning power while a person is incarcerated.**

*Banic v. Workmen's Comp. Appeal Board (Trans-Bridge Lines, Inc.)*, 705 A.2d 432, 437 (Pa. 1997) (emphasis added). Thus, because Claimant's 525-day sentence is a result of his conviction, and those 525 days of incarceration are "the cause of the loss of earning power" not "his work-related injury," *id.*, Claimant "is unequivocally excluded by the plain language of th[is] provision[]." *Harmon*, ___ A.3d at ___, slip op. at 24 (quoting *Penflex, Inc.*, 485 A.2d 359, at 365 (internal citations omitted)).

In addition, the Majority asserts that "the General Assembly included no corresponding provision in Section 306(a.1) [of the Act] that allows for time spent incarcerated **before** a conviction to be deemed as occurring after a conviction, although the General Assembly could have easily included such a provision." Majority Op. at 15-16. However, the General Assembly, being fully aware of the

---

[11]The Pennsylvania Supreme Court expounded on the many reasons a claimant incarcerated only on weekends should not be treated the same as a claimant who is continuously incarcerated but eligible for work release, as that was the focus of the Court's analysis.

AEC - 12

existing law, expressly included the words "any period" to encompass claimants who are convicted of crimes, thereby not requiring employers to pay WC benefits during any period of incarceration after conviction.

When Section 306(a.1) of the Act is read in its entirety, giving effect to **all** of the words, the provision fulfills the legislature's purpose of not requiring employers to pay WC benefits to a claimant "for any period during which the employe is incarcerated after a conviction," 71 P.S. § 511.1, while also upholding the intent of the criminal justice system that all persons are presumed innocent until proven guilty. Further, when giving effect to all of the words, the statute treats all convicted claimants the same and all employers equally, as employers will not be required to pay WC benefits to convicted claimants who are incarcerated in accordance with the plain reading of Section 306(a.1) of the Act. Accordingly, when Section 306(a.1) of the Act is read in its entirety, it fulfills the General Assembly's intent and public policy.

The Majority relies upon *Rogele v. Workers' Compensation Appeal Board (Mattson)*, 969 A.2d 634 (Pa. Cmwlth. 2009), to support its position. In *Rogele*, the claimant was likewise incarcerated before his conviction because he could not post bail. After his conviction, he was sentenced to 4 to 8 years of incarceration, and remained incarcerated thereafter to serve his sentence. The employer unilaterally stopped claimant's WC benefits and filed a petition to suspend the claimant's WC benefits **before** his conviction. This Court denied the employer's suspension petition, and awarded claimant a penalty explaining that, prior to conviction, one is presumed innocent and should not be penalized because he cannot afford bail.

In the instant case, however, Employer did not file the Suspension Petition until **after** Claimant was convicted and once convicted, Claimant's incarcerated time was credited as time-served since it was the same amount of time

he was required to serve *after his conviction*. Therefore, Claimant is not entitled to WC benefits for that time. **Just as one is not to be penalized because he cannot afford bail, neither is one to gain a windfall because he did not post bail.** It is this latter "result that is absurd [and] unreasonable" which the Majority espouses. 1 Pa.C.S. § 1922(1). Accordingly, *Rogele* is clearly distinguishable and inapposite to the current case.

In *Henkels & McCoy, Inc. v. Workers' Compensation Appeal Board (Hendrie)*, 776 A.2d 951 (Pa. 2001), the claimant was convicted of committing terroristic threats. Following his conviction, pursuant to a criminal court order, the claimant was required to remain involuntarily at a psychiatric hospital as a condition of his probation. This Court determined that time at a psychiatric hospital during probation was not *incarceration* after a conviction. The Pennsylvania Supreme Court ruled that "the Commonwealth Court erred in holding that [the c]laimant was not 'incarcerated after a conviction.'" *Id.* at 955. The Supreme Court explained: "It is evident that the legislature sought to preclude the payment of [WC] benefits **to persons who are convicted of violations of the Pennsylvania Crimes Code** . . . ." *Id.* (emphasis added).

Our Supreme Court has long held: "The canons of statutory construction require that a statute be read in a manner which **will effectuate its purpose**, a task which **compels consideration of more than the statute's literal words**." *Pa. Human Relations Comm'n v. Chester Sch. Dist.*, 233 A.2d 290, 295 (Pa. 1967) (emphasis added). As the *Hendrie* Court explained, the purpose of Section 306(a.1) of the Act is to preclude the payment of WC benefits to persons who are removed from the workforce as a result of their convictions. Just as it was not relevant in *Hendrie* that the claimant was required to remain at a psychiatric hospital as opposed to being incarcerated, the fact that Claimant served his sentence before his conviction, and that time-served was credited thereafter, **does not absolve Claimant from the**

**conviction or the sentence he received therefor**. Notwithstanding the timing of his sentence, Claimant is not entitled to WC benefits for time spent incarcerated as a result of his conviction.

The Majority states, "[a]s Claimant notes, it is uncertain whether, had he made bail, that the sentencing judge would have imposed the same sentence." Majority Op. at 18 n.18. In addition to Claimant's argument being speculative, the record belies his argument. The facts are undisputed as they are based on Claimant's attorney's stipulation. In order to avoid the prejudice attached to Claimant's guilty plea, Claimant's attorney stipulated to the relevant facts as follows:

> [WCJ]: . . . . With regard to the issue of the court documents, [Claimant's counsel], you're stipulating to – well, say it again since I don't have the papers and you guys do.
>
> [Claimant's counsel]: **My client entered into a guilty plea** on January [22], 2015. I will stipulate to that. The documents provided by counsel also indicated that [**Claimant**] **was sentenced to five hundred twenty-five days with credit for time served up to five hundred twenty-five days as of that date.** He was set free on January [22], 2015. I will stipulate to that.
>
> [WCJ]: [Claimant's counsel], as I understand it, there was an incarceration based upon failure to obtain bail.
>
> [Claimant's counsel]: Correct. [Claimant] was charged, a bail was set, and [Claimant] could not afford bail. He remained incarcerated until January [22], 2015.
>
> [WCJ]: I think, [Employer's counsel], that based upon the stipulation, your burden is satisfied. I don't need the court documents to support that which [Claimant's counsel] stipulated to unless the court documents say something other than that.
>
> [Employer's counsel]: If we can just stipulate to the date that he was incarcerated?
>
> [WCJ]: The first date?

AEC - 15

[Claimant's counsel]: The first date.

[WCJ]: When is that?

[Employer's counsel]: August [16]th, 2013.

C.R. at 157-158 (emphasis added).

The undisputed record evidence reveals that **Claimant was sentenced to 525 days for his conviction**, that is approximately 1 year, 5 months and 10 days. It is "absurd or unreasonable" and clearly contrary to the legislative intent, for a claimant who can afford bail to have his WC benefits suspended upon conviction, while a claimant who cannot, keeps his WC benefits. *Pa. Cyber Charter Sch.*, 31 A.3d at 663. Further, such an interpretation creates an unequal application of the law for similarly-situated claimants, *i.e.*, claimants who violate the Pennsylvania Crimes Code and have their WC benefits suspended and those who violate the Pennsylvania Crimes Code yet continue to receive WC benefits. Similarly, such an interpretation also treats similarly-situated employers disparately. Clearly, this interpretation, which the Majority espouses, invites a "constitutional question[,]" which our Supreme Court mandates we "avoid." *Robinson Twp.*, 147 A.3d at 574. Accordingly, the WCJ properly granted Employer's Suspension Petition.

### Conclusion

Because the WCJ properly denied Claimant's Review Petition for incorrect AWW and granted Employer's Suspension Petition, I would affirm the Board's order affirming the WCJ's decision.

 

_____
ANNE E. COVEY, Judge